ARROWOOD, Judge.
 

 *529
 
 The Charlotte-Mecklenburg Hospital Authority ("defendant"), d/b/a Carolinas Healthcare System and CMC-Northeast, appeals from judgment in favor of the Estate of Anthony Lawrence Savino ("plaintiff") and orders denying motions for a judgment notwithstanding the verdict ("JNOV") or for a new trial. For the following reasons, we reverse in part, vacate in part, and grant a new trial on non-economic damages.
 

 I.
 
 Background
 

 Anthony Lawrence Savino ("decedent") died on the evening of 30 April 2012 after receiving medical treatment at CMC-Northeast earlier that afternoon in response to complaints of chest pain, a headache, dizziness, and numbness and tingling in his arms and hands.
 

 Specifically, Cabarrus County EMS responded to an emergency call regarding decedent's report of chest pain at approximately 1:32 p.m. on 30 April 2012. While transporting decedent to CMC-Northeast, EMS treated decedent with aspirin and a nitroglycerin tablet to relieve his chest pain. Decedent arrived at CMC-Northeast at approximately 2:22 p.m. The admitting nurse at CMC-Northeast was told verbally by the EMT of EMS's treatment and the admitting nurse signed an "EMS Snapshot" that detailed EMS's treatment. The admitting nurse recorded decedent's complaints into his medical chart. Decedent was then examined by an emergency department physician who reviewed decedent's medical chart. The admitting nurse did not relay to the emergency department physician the information provided by the EMT or included in the "EMS Snapshot." The emergency room physician documented decedent's complaints and ordered diagnostic tests. Results of decedent's lab work were not unusual, leading the physician to report a "negative cardiac work-up." Decedent was discharged at approximately 5:31 p.m. with
 
 *530
 
 instructions to follow-up with his primary care physician. Hours later, at approximately 10:58 p.m., decedent's widow found him unresponsive and immediately called EMS. Resuscitation efforts were unsuccessful and decedent was pronounced dead at the scene.
 

 Almost two years after decedent's death, plaintiff and decedent's widow filed an initial "Complaint for Medical Negligence" on 23 April 2014 against defendant, the attending emergency room physician, and the attending emergency room physician's practice (the "2014 Complaint"). Defendant filed an answer with affirmative defenses and a declaration not to arbitrate on 3 July 2014.
 

 On 6 January 2016, plaintiff filed a motion for leave to amend the 2014 Complaint "to
 
 *570
 
 conform to the evidence presented to date" "out of an abundance of caution[.]" Plaintiff then filed a withdrawal of the motion for leave to amend the complaint on 15 January 2016, followed by a notice of voluntary dismissal as to all parties without prejudice to refile against defendant only on 19 January 2016. Plaintiff and decedent's widow refiled a "Complaint for Medical Negligence" against defendant on 1 February 2016 (the "2016 Complaint"); the attending emergency room physician and the physician's practice were no longer named as defendants.
 
 [1]
 
 Defendant filed an answer with affirmative defenses and a declaration not to arbitrate on 5 April 2016.
 

 The case was tried before a jury in Cabarrus County Superior Court, the Honorable Julia Lynn Gullett presiding, between 24 October 2016 and 15 November 2016.
 

 A disagreement between the parties arose during the trial court's consideration of pretrial motions when plaintiff asserted that "obviously this is a medical negligence case" and explained that "there's basically two contentions of negligence in this case[.]" Plaintiff then asserted that it was proceeding on both theories-negligence in the provision of medical care and negligence in the performance of administrative duties. Defendant disagreed that there were two theories of negligence in this case, asserting "[t]he complaint only alleges one theory of negligence."
 

 The parties continued to argue over this issue throughout the hearing of pretrial motions and the trial. Defendant consistently maintained that plaintiff did not plead a claim for administrative negligence. Plaintiff argued its general negligence allegations pleaded in the 2016 Complaint were sufficient to assert both theories of negligence and
 
 *531
 
 that defendant was on notice of the administrative negligence claim from plaintiff's designation of experts. The trial court allowed plaintiff to proceed on both negligence theories.
 

 At the close of plaintiff's evidence, defendant moved for a directed verdict. Among the grounds argued, defendant claimed plaintiff did not plead an administrative negligence claim and that, to the extent the paragraphs added to the 2016 Complaint alleged administrative negligence, those portions were barred by the statute of limitations. The trial court denied defendant's motion for a directed verdict without hearing argument from the plaintiff. Defendant later filed a renewed motion for a directed verdict at the close of all the evidence on 10 November 2016. In the motion, defendant asserted there was insufficient evidence and that any claim for administrative negligence should be dismissed because it is barred by the statute of limitations. The trial court again denied defendant's motion.
 

 On 15 November 2016, the jury returned verdicts finding decedent's death was caused by defendant's negligent provision of medical care and defendant's negligent performance of administrative duties. The jury found that plaintiff was entitled to $680,000.00 in economic damages and $5,500,000.00 in non-economic damages. The jury also found that defendant's provision of medical care and defendant's performance of administrative duties were both in reckless disregard to the rights and safety of others.
 

 On 8 December 2016, the trial court entered judgment on the jury verdicts awarding plaintiff $6,130,000.00 in total damages, plus pre- and post-judgment interest as allowed by law. On 12 December 2016, the trial court entered an additional order for costs awarding plaintiff $417,847.15 in pre-judgment interest and $15,571.35 in costs.
 

 Following the entry of judgment, on 16 December 2016, defendant filed a motion for a "JNOV" or for a new trial pursuant to Rule 50(b)(1) and Rule 59 of the North Carolina Rules of Civil Procedure. Defendant moved the court to
 

 set aside the Verdict of the Jury and the Judgment entered thereon and to enter Judgment in accordance with the Defendant's Motion for Directed Verdict submitted and argued by the Defendant at the close of the evidence offered by the Plaintiff and renewed at the close of all the evidence, or in the alternative, for a new trial on all issues, or in the alternative, for remittitur.
 

 *571
 

 *532
 
 The motions were heard before Judge Gullett in Cabarrus County Superior Court on 19 January 2017 and the trial court entered separate orders denying defendant's motions for a JNOV and a new trial that same day.
 

 On 7 February 2017, defendant filed notice of appeal to this Court from the 8 December 2016 judgment and the 19 January 2017 orders.
 

 II.
 
 Discussion
 

 Defendant's primary arguments on appeal concern the trial court's denial of its motion for a JNOV on the administrative negligence and medical negligence claims. Alternatively, defendant argues the trial court erred in allowing the jury to award damages for pain and suffering and in granting plaintiff's motion for a directed verdict on defendant's contributory negligence defense.
 

 1.
 
 JNOV
 

 Defendant contends the trial court erred in denying its motion for a JNOV because (1) plaintiff failed to plead a claim for administrative negligence, (2) any claim pleaded in the 2016 Complaint for administrative negligence was barred by the applicable statute of limitations, and (3) plaintiff did not present sufficient evidence of either administrative negligence or medical negligence.
 

 Generally, a motion for a directed verdict or for a JNOV raises the issue of the legal sufficiency of the evidence. Thus, our appellate courts have explained that, "[o]n appeal the standard of review for a JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury."
 
 Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.
 
 ,
 
 136 N.C. App. 493
 
 , 498-99,
 
 524 S.E.2d 591
 
 , 595 (2000).
 

 In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.
 

 Turner v. Duke Univ.
 
 ,
 
 325 N.C. 152
 
 , 158,
 
 381 S.E.2d 706
 
 , 710 (1989). Because of this high standard, "[our Supreme Court] has ... held that a motion for judgment notwithstanding the verdict is cautiously and
 
 *533
 
 sparingly granted."
 
 Bryant v. Nationwide Mut. Fire Ins. Co.
 
 ,
 
 313 N.C. 362
 
 , 369,
 
 329 S.E.2d 333
 
 , 338 (1985).
 

 "[Q]uestions concerning the sufficiency of the evidence to withstand a Rule 50 motion for directed verdict or judgment notwithstanding the verdict present an issue of law[.] On appeal, this Court thus reviews an order ruling on a motion for directed verdict or judgment notwithstanding the verdict
 
 de novo
 
 ."
 
 Austin v. Bald II, L.L.C.
 
 ,
 
 189 N.C. App. 338
 
 , 341-42,
 
 658 S.E.2d 1
 
 , 4 (internal quotation marks and citation omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 469
 
 ,
 
 665 S.E.2d 737
 
 (2008). "Therefore, we consider the matter anew and ... freely substitute our judgment for that of the trial court regardless of whether the trial court made findings of fact and conclusions of law."
 
 Hodgson Const., Inc. v. Howard
 
 ,
 
 187 N.C. App. 408
 
 , 412,
 
 654 S.E.2d 7
 
 , 11 (2007) (internal quotation marks and citation omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 509
 
 ,
 
 668 S.E.2d 28
 
 (2008).
 

 A directed verdict or a JNOV is also appropriate if an affirmative defense is established as a matter of law and there are no issues to be decided by the jury.
 
 See
 

 Munie v. Tangle Oaks Corp.
 
 ,
 
 109 N.C. App. 336
 
 , 341,
 
 427 S.E.2d 149
 
 , 152 (1993) (addressing a statute of limitations argument in a breach of contract case). We review those questions of law which establish bases for a directed verdict or a JNOV
 
 de novo
 
 .
 

 A.
 
 Administrative Negligence
 

 Defendant's first argument on appeal is that the trial court erred in denying its motion for a JNOV on the administrative negligence claim because the claim was not pleaded in plaintiff's complaint. Consequently, defendant contends the trial court should not have allowed plaintiff to proceed on the administrative negligence claim at trial. Plaintiff contends "corporate negligence" was pleaded all along.
 

 *572
 
 Rule 8 of the North Carolina Rules of Civil Procedure outlines the general rules of pleadings. It provides as follows:
 

 A pleading which sets forth a claim for relief ... shall contain
 

 (1) A short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, and
 

 (2) A demand for judgment for the relief to which he deems himself entitled. ...
 

 *534
 
 N.C. Gen. Stat. § 1A-1, Rule 8(a) (2017). Rule 8 further provides that "[n]o technical forms of pleading ... are required" and that "[e]ach averment of a pleading shall be simple, concise, and direct." N.C. Gen. Stat. § 1A-1, Rule 8(e)(1). Lastly, "[a]ll pleadings shall be so construed as to do substantial justice." N.C. Gen. Stat. § 1A-1, Rule 8(f).
 

 This Court has described the general standard for civil pleadings under Rule 8 as "notice pleading." That is, "[p]leadings should be construed liberally and are sufficient if they give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial."
 
 Haynie v. Cobb
 
 ,
 
 207 N.C. App. 143
 
 , 148-49,
 
 698 S.E.2d 194
 
 , 198 (2010) (internal quotation marks and citation omitted). "As we have consistently held, the policy behind notice pleading is to resolve controversies on the merits, after an opportunity for discovery, instead of resolving them based on the technicalities of pleading."
 
 Ellison v. Ramos
 
 ,
 
 130 N.C. App. 389
 
 , 395,
 
 502 S.E.2d 891
 
 , 895,
 
 disc. review denied
 
 ,
 
 349 N.C. 356
 
 ,
 
 517 S.E.2d 891
 
 (1998). "While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a legally recognized claim ...."
 
 Highland Paving Co., LLC v. First Bank
 
 ,
 
 227 N.C. App. 36
 
 , 44,
 
 742 S.E.2d 287
 
 , 293 (2013) (internal quotation marks and citation omitted).
 

 The question raised by defendant's first argument on appeal is whether plaintiff sufficiently pleaded a medical malpractice claim for administrative negligence to put defendant on notice of the claim. We hold plaintiff did not sufficiently plead administrative negligence.
 

 As detailed above, two complaints were filed in this case. For purposes of addressing the sufficiency of the pleadings, it is plaintiff's 2016 Complaint that is relevant to our analysis. The parties, however, also refer to both the 2014 Complaint and plaintiff's motion to amend the 2014 Complaint in support of their respective arguments regarding whether the 2016 Complaint sufficiently pleaded administrative negligence. Specifically, defendant contends that all of the allegations of negligence pleaded in the 2016 Complaint and the 2014 Complaint focused exclusively on the clinical care provided by defendant to decedent. Consequently, defendant contends plaintiff asserted a medical negligence claim but not an administrative negligence claim.
 

 Instead of responding to defendant's distinction between medical negligence claims and administrative negligence claims, plaintiff spends the majority of its response asserting that both the 2016 Complaint and 2014 Complaint sufficiently allege "corporate negligence." Citing
 
 Estate of Ray v. Forgy
 
 ,
 
 227 N.C. App. 24
 
 ,
 
 744 S.E.2d 468
 
 ,
 
 disc. review denied
 
 ,
 
 *535
 

 367 N.C. 271
 
 ,
 
 752 S.E.2d 475
 
 (2013), plaintiff acknowledges that " '[t]here are fundamentally two kinds of [corporate negligence] claims: (1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to negligence in the administration or management of the hospital.' " 227 N.C. App. at 29,
 
 744 S.E.2d at 471
 
 (quoting
 
 Estate of Waters v. Jarman
 
 ,
 
 144 N.C. App. 98
 
 , 101,
 
 547 S.E.2d 142
 
 , 144,
 
 disc. review denied
 
 ,
 
 354 N.C. 68
 
 ,
 
 553 S.E.2d 213
 
 (2001) ). Nevertheless, plaintiff's argument does not focus on whether it has pleaded a claim for administrative negligence. Plaintiff instead argues that, "under North Carolina law, to state a valid claim for corporate negligence, a plaintiff need only allege the hospital breached the applicable standard of care based on any one of the many clinical
 
 or
 
 administrative duties owed by the hospital." (Emphasis in plaintiff's argument). During oral argument before this Court, plaintiff consistently repeated
 
 *573
 
 its argument that it sufficiently pleaded "corporate negligence."
 

 It is not clear from plaintiff's argument on appeal whether plaintiff fully comprehends defendant's argument or the distinction between types of medical malpractice actions in
 
 N.C. Gen. Stat. § 90-21.11
 
 .
 

 Prior to 2011, "medical malpractice action" was defined in our General Statutes as a "civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental or other health care by a health care provider."
 
 N.C. Gen. Stat. § 90-21.11
 
 (2009). The term "health care provider" was defined to include a hospital.
 
 Id
 
 . Applying these definitions, this Court recognized that a hospital could be held liable for medical malpractice where claims of corporate negligence arose out of clinical care provided by the hospital to a patient.
 
 Estate of Waters
 
 ,
 
 144 N.C. App. at 101
 
 ,
 
 547 S.E.2d at 144-45
 
 .
 

 In 2011, the General Assembly expanded the definition of "medical malpractice action" in
 
 N.C. Gen. Stat. § 90-21.11
 
 to include civil actions against a hospital for damages for personal injury or death arising out of the hospital's breach of administrative or corporate duties to patients.
 
 See
 
 2011 N.C. Sess. Laws ch. 400, § 5 (retaining the previous definition outlining medical negligence claims as subdivision (a) and adding subdivision (b) to incorporate administrative negligence claims). In full, the definition of "medical malpractice action" in
 
 N.C. Gen. Stat. § 90-21.11
 
 now includes either of the following:
 

 a. A civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.
 

 *536
 
 b. A civil action against a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes for damages for personal injury or death, when the civil action (i) alleges a breach of administrative or corporate duties to the patient, including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.
 

 N.C. Gen. Stat. § 90-21.11
 
 (2) (2017). The term "health care provider" continues to include a hospital following the amendments.
 
 See
 

 N.C. Gen. Stat. § 90-21.11
 
 (1)(b).
 

 This appears to be the first case deciding the pleading requirements for administrative negligence as a malpractice action following the 2011 amendments to the statute. However, we do not perceive that the legislature intended to create a new cause of action by the 2011 amendment, but rather intended to re-classify administrative negligence claims against a hospital as a medical malpractice action so that they must meet the pleading requirements of a medical malpractice action rather than under a general negligence theory.
 

 Upon review of the amended
 
 N.C. Gen. Stat. § 90-21.11
 
 , we now reiterate what plaintiff has acknowledged this Court explained in
 
 Estate of Ray
 
 , "[t]here are fundamentally two kinds of [corporate negligence] claims: (1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to negligence in the administration or management of the hospital." 227 N.C. App. at 29,
 
 744 S.E.2d at 471
 
 (internal quotation marks and citations omitted). Following the 2011 amendments to
 
 N.C. Gen. Stat. § 90-21.11
 
 , both types of corporate negligence claims are considered medical malpractice actions.
 

 In this case, defendant's argument is not that plaintiff failed to allege corporate negligence, as plaintiff frames the issue in its response. Defendant contends only that plaintiff failed to allege breaches of administrative duties necessary to plead an administrative negligence claim under
 
 N.C. Gen. Stat. § 90-21.11
 
 (2)(b).
 

 This Court has explained that
 

 [a] plaintiff in a medical malpractice action may proceed against a hospital ... under two separate and distinct theories-
 
 respondeat superior
 
 (charging it with vicarious
 
 *574
 

 *537
 
 liability for the negligence of its employees, servants or agents), or
 
 corporate negligence
 
 (charging the hospital with liability for its employees' violations of duties owed directly from the hospital to the patient)."
 

 Clark v. Perry
 
 ,
 
 114 N.C. App. 297
 
 , 311-12,
 
 442 S.E.2d 57
 
 , 65 (1994) (internal citations omitted) (emphasis in original). In the 2016 Complaint, plaintiff makes clear in paragraph 3 that
 

 [a]ll allegations contained herein against said corporation also refer to and include the principals, agents, employees and/or servants of said corporation, either directly or vicariously, under the principles of corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior and that all acts, practices and omissions of [d]efendant's employees are imputed to their employer, [defendant].
 

 Plaintiff then summarizes the "medical events occasioning [the] Complaint" in paragraph 6 and specifically identifies the following alleged negligent acts of defendant in paragraph 7:
 

 Defendant, including by and through its agents, servants and assigns, including its nursing staff, was negligent in its care of [decedent] in that it, among other things:
 

 a. Failed to timely and adequately assess, diagnose, monitor and treat the conditions of [decedent] so as to render appropriate medical diagnosis and treatment of his symptoms;
 

 b. Failed to properly advise [decedent] of additional medical and pharmaceutical courses that were appropriate and should have been considered, utilized, and employed to treat [decedent's] medical condition prior to discharge;
 

 c. Failed to timely obtain, utilize and employ proper, complete and thorough diagnostic procedures in the delivery of appropriate medical care to [decedent];
 

 d. Failed to exercise due care, caution and circumspection in the diagnosis of the problems presented by [decedent];
 

 *538
 
 e. Failed to exercise due care, caution and circumspection in the delivery of medical and nursing care to [decedent];
 

 f. Failed to adequately evaluate [decedent's] response/lack of response to treatment and report findings;
 

 g. Failed to follow accepted standards of medical care in the delivery of care to [decedent];
 

 h. Failed to use their best judgment in the care and treatment of [decedent];
 

 i. Failed to exercise reasonable care and diligence in the application of his/her/their knowledge and skill to [decedent's] care;
 

 j. Failed to recognize, appreciate and/or react to the medical status of [decedent] and to initiate timely and appropriate intervention, including but not limited to medical testing, physical examination and/or appropriate medical consultation;
 

 k. Failed to use their best judgment in the care and treatment of [decedent];
 

 l. Failed to provide health care in accordance with the standards of practice among members of the same health care professions with similar training and experience situated in the same or similar communities at the time the health care was rendered to [decedent.]
 

 These allegation of negligent acts mirror the allegations in the 2014 Complaint.
 

 It is evident from a review of these allegations that the allegations identify failures in the clinical care, either diagnosis or treatment, provided to decedent by defendant by and thru its employees. The allegations do not implicate defendant's administrative duties.
 

 In addition to arguing that the above allegations put defendant on notice of "corporate negligence" claims, plaintiff contends the 2016 Complaint "went further" than the 2014 Complaint "by alleging [d]efendant had Chest Pain Center protocols reflecting the standard of care that were not followed[.]" The three factual allegations included in
 
 *575
 
 paragraph 6 of the 2016 Complaint that were absent from the corresponding section of the 2014 Complaint are as follows:
 

 *539
 
 l. Prior to the above events, [defendant] had submitted an application to the Society of Chest Pain Centers (a/k/a the Society for Cardiovascular Patient Care) for CMC-Northeast to gain for [sic] accreditation as a Chest Pain Center and was approved for such accreditation at the time of the events complained of.
 

 m. As part of the Society of Chest Pain Centers accreditation process [defendant] had submitted an application to the Society of Chest Pain Centers that it employed certain protocols, clinical practice guidelines and procedures in the care of patients presenting with chest pain complaints.
 

 n. The protocols, clinical practice guidelines and procedures contained in the CMC-North[e]ast accreditation application replicated the existing standards of practice for medical providers and hospitals in the same care profession with similar training and experience situated in the same or similar communities with similar resources at the time of the alleged events giving rise to this cause of action.
 

 Although the development, implementation, and review of protocols, practice guidelines, and procedures for purposes of accreditation implicate defendant's administrative duties, plaintiff did not include any allegations of negligence associated with those duties in the 2016 Complaint. As stated above, the negligent acts alleged in the 2016 Complaint are the same as those included in the 2014 Complaint, which did not include the factual allegations regarding defendant's administrative duties related to accreditation as a Chest Pain Center.
 

 Plaintiff asserts that the negligence allegation in paragraph 7(l) of the 2016 Complaint, when read in conjunction with the factual allegations about the Chest Pain Center application and accreditation, is sufficient to put defendant on notice of any corporate negligence claims. Again, we disagree. Something more specific is necessary to put defendant on notice of an administrative negligence claim.
 

 Paragraph 7(l) is a general allegation that defendant failed to provide health care in accordance with the standards of practice. The failure to follow protocols in this instance goes to the clinical care provided to decedent. The standards of health care for medical negligence and administrative negligence claims are set forth in
 
 N.C. Gen. Stat. § 90-21.12
 
 (a). Although the standards outlined in
 
 *540
 

 N.C. Gen. Stat. § 90-21.12
 
 (a) for medical negligence claims under
 
 N.C. Gen. Stat. § 90-21.11
 
 (2)(a) ("the
 
 care
 
 of such health care provider was not in accordance with the standards of practice among
 
 members of the same health care profession with similar training and experience
 
 situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action") and administrative negligence claims under
 
 N.C. Gen. Stat. § 90-21.11
 
 (2)(b) ("the
 
 action or inaction
 
 of such health care provider was not in accordance with the standards of practice among
 
 similar health care providers
 
 situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action") are similar, there are differences. (Emphasis on differences added). Paragraph 7(l) refers to care provided by defendant falling below "the standards of practice among members of the same health care professions with similar training and experience[,]" in keeping with the standard of health care for medical negligence provided in
 
 N.C. Gen. Stat. § 90-21.12
 
 (a).
 

 We further note that this is not a case where it appears plaintiff did not understand how to plead an administrative negligence claim. It is clear from plaintiff's motion for leave to amend the 2014 Complaint and the attached proposed amended complaint filed on 6 January 2016 that plaintiff knew how to plead an administrative negligence claim. In those filings, plaintiff sought to add the following allegations to the negligent acts already listed in the 2014 Complaint:
 

 m. Failed to provide and/or require adequate training, instruction, monitoring, compliance, coordination among providers,
 
 *576
 
 and supervision of its employees and contracted medical staff members concerning utilization, implementation, and compliance with its written protocols, standing orders, guidelines, procedures, and/or policies.
 

 n. Failed to enforce and/or follow its written protocols, standing orders, guidelines, procedures and/or policies.
 

 o. Failed to establish, design, and implement clear, explicit and effective protocols, standing orders, guidelines, procedures and/or policies relating to communication among employees, contracted medical staff members, and EMS personnel.
 

 p. Failed to properly train, supervise, restrict, and monitor emergency department personnel with
 
 *541
 
 known impairments critical to job performance and patient care.
 

 q. Failed to establish, design, and implement clear, explicit, and effective written protocols, standing orders, guidelines, procedures and/or policies to ensure immediate collection, transfer to treating medical providers, availability, and retention of verbal and written information provided by EMS personnel.
 

 r. Misled the consuming public and EMS personnel thus causing injury to ... decedent by holding itself out to be a chest pain center and failing to follow its stated ACS protocol for patients in the emergency department.
 

 These proposed amendments to plaintiff's 2014 Complaint clearly allege administrative negligence by defendant and are the type of allegations necessary to plead an administrative negligence claim. However, plaintiff withdrew the motion for leave to amend the 2014 Complaint, took a voluntary dismissal on the 2014 Complaint, and did not plead any of these allegations of administrative negligence in the 2016 Complaint.
 

 Plaintiff also asserts that, apart from the 2016 Complaint, discovery requests served after the 2014 Complaint and a supplemental designation of experts put defendant on notice of the administrative negligence claim. While those documents do indicate there may be evidence pertinent to administrative negligence, they do not take the place of a pleading. The discovery requests and the supplemental designation of experts were filed prior to the 2016 Complaint. Thus, if plaintiff was aware of evidence of administrative negligence and wanted to proceed on that theory, it could have included specific allegations in the 2016 Complaint. On appeal, our Courts have refused to allow plaintiffs to assert negligence claims not pleaded in the complaint, holding that "pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim."
 
 Anderson v. Assimos
 
 ,
 
 356 N.C. 415
 
 , 417,
 
 572 S.E.2d 101
 
 , 102 (2002) ;
 
 see also
 

 Sturgill v. Ashe Mem'l Hosp., Inc.
 
 ,
 
 186 N.C. App. 624
 
 , 630,
 
 652 S.E.2d 302
 
 , 306-307 (2007),
 
 disc. review denied
 
 ,
 
 362 N.C. 180
 
 ,
 
 658 S.E.2d 662
 
 (2008). The same holds true at the trial court level under Rule 8.
 

 While labels of legal theories do not control,
 
 see
 

 Haynie
 
 ,
 
 207 N.C. App. at 149
 
 ,
 
 698 S.E.2d at 198
 
 , the 2016 Complaint, labeled "Complaint for Medical Negligence," included only allegations of medical negligence. Those negligence allegations were not sufficient to put defendant on notice of a claim of administrative negligence. Thus, we hold the trial court erred in allowing plaintiff to proceed on an administrative negligence theory in the medical malpractice action.
 

 *542
 
 B.
 
 Statute of Limitations
 

 Defendant also argues that the trial court erred in denying its motion for JNOV on the administrative negligence claim because it was barred by the statute of limitations. Assuming arguendo plaintiff sufficiently pleaded an administrative negligence claim in the 2016 Complaint, we agree the claim was time barred.
 

 Generally, there is a three-year statute of limitations period for any medical malpractice action.
 
 N.C. Gen. Stat. § 1-15
 
 (c) (2017). Defendant, however, argues the applicable statute of limitations in this case is the two-year limitations period for bringing a wrongful death claim based on negligence.
 
 See
 

 N.C. Gen. Stat. § 1-53
 
 (4) (2017). This
 
 *577
 
 Court has held that a wrongful death action based on medical malpractice must be brought within two years of a decedent's death.
 
 See
 

 King v. Cape Fear Mem'l Hosp., Inc.
 
 ,
 
 96 N.C. App. 338
 
 , 341,
 
 385 S.E.2d 812
 
 , 814 (1989) (holding discovery exception for latent injuries contained in
 
 N.C. Gen. Stat. § 1-15
 
 (c) did not apply to a wrongful death action based upon medical malpractice),
 
 disc. review denied
 
 ,
 
 326 N.C. 265
 
 ,
 
 389 S.E.2d 114
 
 (1990). Regardless of whether defendant pleaded a wrongful death claim in addition to a medical malpractice claim in this case,
 
 see
 

 Udzinski v. Lovin
 
 ,
 
 159 N.C. App. 272
 
 , 275,
 
 583 S.E.2d 648
 
 , 650-51 (2003) (explaining that although not perfectly worded, the plaintiff had sufficiently alleged a wrongful death claim in addition to and based on the underlying medical malpractice claim), both limitations periods expired prior to plaintiff's filing of the 2016 Complaint on 1 February 2016, almost four years after decedent's death on 30 April 2012. That, however, does not end our inquiry.
 

 Rule 41(a) of the North Carolina Rules of Civil Procedure provides that "[i]f an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice ... a new action based on the same claim may be commenced within one year after such dismissal ...." N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (2017). This Court has explained that "the relation-back provision in Rule 41(a)(1) only applies to those claims in the second complaint that were included in the voluntarily-dismissed first complaint."
 
 Williams v. Lynch
 
 ,
 
 225 N.C. App. 522
 
 , 526,
 
 741 S.E.2d 373
 
 , 376 (2013).
 

 Plaintiff filed the 2014 Complaint on 23 April 2014, less than two years after decedent's death and within any applicable statute of limitations. Plaintiff then took a voluntary dismissal of the 2014 Complaint on 19 January 2016, just weeks before filing the 2016 Complaint. The timing of plaintiff's filing of the 2014 Complaint and plaintiff's subsequent
 
 *543
 
 voluntary dismissal and filing of the 2016 Complaint allows for the possibility that an administrative negligence claim in the 2016 Complaint is timely if it relates back to the 2014 Complaint.
 

 However, assuming arguendo the 2016 Complaint pleads an administrative negligence claim, that claim does not relate back to the 2014 Complaint. As detailed above, this Court made clear in
 
 Estate of Ray
 
 that medical negligence and administrative negligence are distinct claims. 227 N.C. App. at 29,
 
 744 S.E.2d at 471
 
 ("[t]here are fundamentally two kinds of [corporate negligence] claims: (1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to negligence in the administration or management of the hospital."). All of the factual and negligence allegations pleaded in the 2014 Complaint relate to the medical care provided by defendant to decedent. There are no allegations of breaches of defendant's administrative duties.
 

 Apart from the 2014 Complaint, plaintiff's own statements show that it could not have pleaded administrative negligence in the 2014 Complaint. As noted above, plaintiff's motion for leave to amend the complaint and the attached proposed amended complaint filed on 6 January 2016 include the necessary allegations to plead a claim of administrative negligence. In the motion, plaintiff admits that it
 

 had no way of knowing about the manner in which [CMC-Northeast's] emergency department operated, [CMC-Northeast's] failure to provide and/or require adequate training, instruction, monitoring, compliance, coordination among providers, and supervision of its employees and contracted medical staff members concerning utilization, implementation, and compliance with its written protocols, standing orders, guidelines, procedures, and/or policies, and the issues concerning [the nurse who received defendant at the hospital].
 

 Plaintiff further states in the motion that it sought to continue the case in November 2015 "to explore '... new areas of negligence not previously known to [p]laintiff ...' and to perhaps seek 'amendment to [p]laintiff's [c]omplaint.' "
 

 These statements by plaintiff in the motion for leave to amend the 2014 Complaint are noteworthy because they indicate plaintiff did not have enough information to plead an
 
 *578
 
 administrative negligence claim at the time plaintiff filed the 2014 Complaint. Since plaintiff did not plead an administrative negligence claim in the 2014 Complaint, any
 
 *544
 
 administrative negligence claim in the 2016 Complaint did not relate back to the 2014 Complaint and, therefore, is time barred.
 

 Plaintiff argues this case is similar to
 
 Haynie
 
 , in which this Court rejected the defendant's argument that a negligent entrustment claim, which was pleaded in a second complaint filed after a voluntary dismissal of the original complaint, should be dismissed because it was not based on the claims in the original complaint.
 
 207 N.C. App. at 149
 
 ,
 
 698 S.E.2d at 199
 
 . Plaintiff contends that defendant has asked this Court to do what it refused to do in
 
 Haynie
 
 -to ignore the original complaint and to instead focus on proposed amendments to the complaint.
 
 Id
 
 . at 150,
 
 698 S.E.2d at 199
 
 . The present case is distinguishable. In
 
 Haynie
 
 , this Court held "[the] plaintiff did allege the necessary elements to put [the] defendant ... on notice of the claim of negligent entrustment, even if plaintiff mislabeled or failed to label the claim."
 
 Id
 
 . at 149-50,
 
 698 S.E.2d at 199
 
 . A review of plaintiff's motion to amend and the attached proposed amended complaint in this case only highlights what is evident from a review of the 2014 Complaint-there are no allegations of breaches of defendant's administrative duties in the 2014 Complaint to put defendant on notice of an administrative negligence claim.
 

 C.
 
 Sufficiency of the Evidence
 

 Defendant next argues that even if an administrative negligence claim was properly pleaded and timely, the trial court erred in denying its motion for a JNOV on both the administrative negligence claim and the medical negligence claim because plaintiff failed to present sufficient evidence to submit the claims to the jury. Having determined the administrative negligence claim was not properly pleaded, we only address defendant's argument as it relates to medical negligence.
 

 As stated above, "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical ... care by a health care provider" is defined as a medical malpractice action in
 
 N.C. Gen. Stat. § 90-21.11
 
 (2)(a). "In [such] a medical malpractice action, a plaintiff has the burden of showing '(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff.' "
 
 Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.
 
 ,
 
 175 N.C. App. 474
 
 , 477,
 
 624 S.E.2d 380
 
 , 383 (2006) (quoting
 
 Weatherford v. Glassman
 
 ,
 
 129 N.C. App. 618
 
 , 621,
 
 500 S.E.2d 466
 
 , 468 (1998) ). Here, defendant only challenges the sufficiency of the evidence to establish the standard of care for medical negligence.
 

 *545
 

 N.C. Gen. Stat. § 90-21.12
 
 sets forth the appropriate standards of care in medical malpractice actions. Pertinent to claims of medical negligence, the statute provides:
 

 in any medical malpractice action as defined in [N.C. Gen. Stat. §] 90-21.11(2)(a), the defendant health care provider shall not be liable for the payment of damages unless the trier of fact finds by the greater weight of the evidence
 
 that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same
 

 or similar circumstances at the time of the alleged act giving rise to the cause of action
 
 [.]
 

 N.C. Gen. Stat. § 90-21.12
 
 (a) (emphasis added). "Because questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony."
 
 Smith v. Whitmer
 
 ,
 
 159 N.C. App. 192
 
 , 195,
 
 582 S.E.2d 669
 
 , 671-72 (2003).
 

 In this case, plaintiff presented Dr. Dan Michael Mayer as an expert to testify regarding the standard of care for medical negligence. Defendant contends that "Dr. Mayer's demonstrated lack of familiarity with the community standard of care rendered him unqualified to testify regarding the standard of care for the medical negligence
 
 *579
 
 claim." We disagree with defendant's characterization of Dr. Mayer's familiarity with the community standard of care.
 

 This Court has applied a highly deferential standard of review to evidentiary rulings on expert testimony, explaining that
 

 [t]rial courts are afforded a wide latitude of discretion when making a determination about the admissibility of expert testimony. The trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion. A trial court's evidentiary ruling is not an abuse of discretion unless it was so arbitrary that it could not have been the result of a reasoned decision.
 

 Kearney v. Bolling
 
 ,
 
 242 N.C. App. 67
 
 , 76,
 
 774 S.E.2d 841
 
 , 848 (2015) (internal quotation marks and citations omitted),
 
 disc. review denied
 
 , --- N.C. ----,
 
 783 S.E.2d 497
 
 (2016).
 

 *546
 
 This Court has explained that
 

 [a]n expert witness "testifying as to the standard of care" is not required "to have actually practiced in the same community as the defendant," but "the witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care in similar communities."
 

 Id
 
 . (quoting
 
 Smith
 
 , 159 N.C. App. at 196,
 
 582 S.E.2d at
 
 672 ). " '[O]ur law does not prescribe any particular method by which a medical doctor must become familiar with a given community. Book or Internet research may be a perfectly acceptable method of educating oneself regarding the standard of medical care applicable in a particular community.' "
 
 Robinson v. Duke Univ. Health Sys., Inc.
 
 ,
 
 229 N.C. App. 215
 
 , 236,
 
 747 S.E.2d 321
 
 , 336 (2013) (quoting
 
 Grantham v. Crawford
 
 ,
 
 204 N.C. App. 115
 
 , 119,
 
 693 S.E.2d 245
 
 , 248-49 (2010) ),
 
 disc. review denied
 
 ,
 
 367 N.C. 328
 
 ,
 
 755 S.E.2d 618
 
 (2014).
 

 The "critical inquiry" in determining whether a medical expert's testimony is admissible under the requirements of
 
 N.C. Gen. Stat. § 90-21.12
 
 is "whether the doctor's testimony, taken as a whole" establishes that he "is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community."
 

 Kearney
 
 ,
 
 242 N.C. App. at 76
 
 ,
 
 774 S.E.2d at 848
 
 (quoting
 
 Pitts v. Nash Day Hosp., Inc.
 
 ,
 
 167 N.C. App. 194
 
 , 197,
 
 605 S.E.2d 154
 
 , 156 (2004),
 
 aff'd per curiam
 
 ,
 
 359 N.C. 626
 
 ,
 
 614 S.E.2d 267
 
 (2005) ). "According to our Supreme Court, '[a]ssuming expert testimony is properly qualified and placed before the trier of fact, [N.C. Gen. Stat. §] 90-21.12 reserves a role for the jury in determining whether an expert is sufficiently familiar with the prevailing standard of medical care in the community.' "
 
 Grantham
 
 ,
 
 204 N.C. App. at 119
 
 ,
 
 693 S.E.2d at 248
 
 (quoting
 
 Crocker v. Roethling
 
 ,
 
 363 N.C. 140
 
 , 150,
 
 675 S.E.2d 625
 
 , 633 (2009) (Martin, J., concurring) (citing
 
 N.C. Gen. Stat. § 90-21.12
 
 (2007) ) ).
 

 As stated above, plaintiff presented Dr. Mayer to testify as an expert about the community standard of care for purposes of medical negligence. Dr. Mayer was accepted by the trial court as an expert in emergency medicine in a hospital setting, emergency nursing services, and chest pain protocols. While giving his background in emergency medicine, Dr. Mayer testified that he most recently practiced emergency
 
 *547
 
 medicine at Albany Medical Center and taught at Albany Medical College, an accredited medical school, until he retired in 2014. Dr. Mayer further explained that he continues to be involved in the field of emergency medicine by regularly teaching in the emergency medicine residency program at Albany Medical College and by teaching medical students at Albany Medical College.
 

 Regarding the standard of care, Dr. Mayer testified that he was familiar with the standard of care at CMC-Northeast. Dr. Mayer explained that he "found ... [CMC-Northeast] was in many ways very similar to Albany Medical Center" because they have "pretty much the same types of specialists for general specialty medical problems[.]" Dr. Mayer opined that the community standard of care in Albany was the same or very similar to the community standard of care expected in Concord and explained "[t]here
 
 *580
 
 would only be a small minority of patients, none of whom would fit the characteristics of [decedent], that would be treated differently at [CMC-Northeast] than would be treated at Albany Medical Center." Dr. Mayer added that he was familiar with the standard of care that applies to nurses in the emergency department at CMC-Northeast because "[t]he types of duties that nurses have at CMC[-]Northeast is exactly the same as the role of nurses at Albany Medical Center."
 

 To establish a basis for Dr. Mayer's familiarity with the standard of care and to support his conclusions in this case, plaintiff questioned Dr. Mayer about the materials he reviewed in preparation for the case. Dr. Mayer testified that he first reviewed the record in this case which included decedent's medical records from 30 April 2012 and the depositions of the attending emergency department physician, the emergency department nurse who attended to decedent, the paramedic who responded to the emergency calls, and other hospital employees and administrators. Dr. Mayer also reviewed CMC-Northeast's policies and procedures, including the hospital's application to become certified as a Chest Pain Center. Dr. Mayer explained that he reviews these types of materials before he discusses the case with the attorneys so that he "can give as objective a review of the care that was provided as possible." Dr. Mayer then advises whether there is a case or not based on the standard of care, which Dr. Mayer further explained is "not perfect care," but "what a reasonably prudent physician under the same circumstances would do."
 

 Pertaining to the community standard of care in this case, Dr. Mayer testified that he reviewed a lengthy demographics package, which he explained contained information about "the characteristics of Cabarrus County and of Concord and of the -- both the general demographics and
 
 *548
 
 also the medical issues, you know, what types of physicians practice here, what are the different hospitals, how big are the hospitals, how many patients do they see." Dr. Mayer stated that it was important for him to review this information because "I want to make sure that in fact what I'm testifying to about the standard of practice in Cabarrus County, and specifically at [CMC-Northeast], is something that I'm familiar with and that I can then testify truthfully would be appropriate care and reasonable care." Dr. Mayer acknowledged that there are community standards of care and explained that the purpose of reading the demographics package was to determine whether there were extenuating circumstances that were relevant to the standard of care in Concord. Dr. Mayer also indicated that he reviewed websites for Carolinas Healthcare System.
 

 Based on the information reviewed by Dr. Mayer about Concord and CMC-Northeast, Dr. Mayer testified the community standard of care in this case was similar to Albany Medical Center, where he worked and with which he was familiar.
 

 Citing this Court's decision in
 
 Smith
 
 ,
 
 159 N.C. App. 192
 
 ,
 
 582 S.E.2d 669
 
 (2003), defendant contends Dr. Mayer's testimony was insufficient to establish that he was familiar with the relevant community standard of care because Dr. Mayer had never been to the area prior to offering testimony in this case; Dr. Mayer had never practiced medicine in North Carolina, held a medical license in North Carolina, or previously testified in North Carolina; Dr. Mayer's familiarity was based on the demographics package received for purposes of testifying; and because Dr. Mayer noted differences between CMC-Northeast and Albany Medical Center and unjustifiably compared the two. Defendant asserts the above argument in reference to the community standard of care for administrative negligence, but subsequently asserts that "[t]he same holds true with respect to [plaintiff's] medical negligence claim: Dr. Mayer's demonstrated lack of familiarity with the community standard of care rendered him unqualified to testify regarding the standard of care for the medical negligence claim." We are not convinced.
 

 In
 
 Smith
 
 , this Court held the trial court properly excluded testimony of the plaintiff's expert witness because the witness' testimony was devoid of support for his assertion that he was sufficiently familiar with the applicable standard of care.
 

 *581
 
 159 N.C. App. at 196-97,
 
 582 S.E.2d at 672-73
 
 . This Court explained that the witness
 

 stated that the sole information he received or reviewed concerning the relevant standard of care ... was verbal
 
 *549
 
 information from [the] plaintiff's attorney regarding "the approximate size of the community and what goes on there." [The witness] could offer no further details ... concerning the medical community, nor could he actually remember what plaintiff's counsel had purportedly told him.
 

 Id
 
 . at 196-97,
 
 582 S.E.2d at 672
 
 . Furthermore, the witness stated there was a national standard of care and "that he could 'comment on the standard of care as far as a reasonably prudent orthopedic surgeon anywhere in the country regardless of what [this particular] medical community ... might do.' "
 
 Id
 
 . at 197,
 
 582 S.E.2d at 672
 
 .
 
 [2]
 

 Unlike in
 
 Smith
 
 , Dr. Mayer's testimony in this case was based on his review of a lengthy demographics package, internet research conducted by Dr. Mayer on CMC-Northeast, and Dr. Mayer's comparison of the community to Albany Medical Center. Plaintiff has cited many cases in which this Court has determined similar bases were sufficient to demonstrate familiarity with the community standard of care.
 
 See i.e.
 

 Kearney
 
 ,
 
 242 N.C. App. at 76-78
 
 ,
 
 774 S.E.2d at
 
 848-49 ;
 
 Robinson
 
 ,
 
 229 N.C. App. at 235-36
 
 ,
 
 747 S.E.2d at
 
 335-36 ;
 
 Day v. Brant
 
 ,
 
 218 N.C. App. 1
 
 , 6-7,
 
 721 S.E.2d 238
 
 , 243-44,
 
 disc. review denied
 
 ,
 
 366 N.C. 219
 
 ,
 
 726 S.E.2d 179
 
 (2012).
 

 We agree the present case is governed by those cases cited by plaintiff and hold the trial court did not abuse its discretion in determining Dr. Mayer was qualified to testify as an expert to the community standard of care for medical negligence.
 

 2.
 
 New Trial
 

 In the event the trial court erred in denying its motion for a JNOV on administrative negligence, but the trial court did not err in denying its motion for a JNOV on medical negligence, defendant asserts a new trial is required on medical negligence. Defendant argues that the evidence and the jury instructions for administrative negligence and medical negligence were so "intermingled" that "the jury's determination on the medical negligence claim ... was tainted by the trial court's error in
 
 *550
 
 allowing the administrative negligence claim to proceed at trial at all." We are not convinced a new trial is required.
 

 Defendant first takes issue with the inclusion of "implement" in the jury instructions for medical negligence by arguing its inclusion "suggested to the jury that it could find [defendant] liable for medical negligence based on administrative negligence-related principles." This is defendant's only challenge to the jury instructions.
 

 "[T]he trial court has wide discretion in presenting the issues to the jury ...."
 
 Murrow v. Daniels
 
 ,
 
 321 N.C. 494
 
 , 499,
 
 364 S.E.2d 392
 
 , 396 (1988). On appeal,
 

 this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
 

 Hammel v. USF Dugan, Inc.
 
 ,
 
 178 N.C. App. 344
 
 , 347,
 
 631 S.E.2d 174
 
 , 177 (2006) (citations and quotation marks omitted).
 

 A review of the jury instructions shows that the trial court used "implement" three times in the instructions for medical negligence, each time in a similar fashion. The
 
 *582
 
 relevant portions of the trial court's instructions are as follows:
 

 With respect to the first issue in this case, the plaintiff contends and the defendant denies that the defendant was negligent in one or more of the following ways. The first contention is that the hospital did not use its best judgment in the treatment and care of its patient in that the defendant did not adequately
 
 implement and/or follow
 
 protocols, processes, procedures and/or policies for the evaluation and management of chest pain patients in the emergency room on April 30th of 2012, in accordance with the standard of care. The second contention is that the hospital did not use its best judgment in the treatment and care of its patient, in that its employee,
 
 *551
 
 [the attending nurse], did not adequately collect and/or communicate to other health care providers pertinent medical information necessary for the care and treatment of [decedent] on April 30th of 2012.
 

 The third contention is that the hospital did not use reasonable care and diligence in the application of its knowledge and skill to its patient's care in that Carolinas Healthcare System did not adequately
 
 implement and/or follow
 
 the protocols, processes, procedures and/or policies for the evaluation and management of chest pain patients in the emergency room or emergency department on April 30th of 2012. The fourth contention is that the hospital did not use reasonable care and diligence and the application of its knowledge and skill to its patient's care in that its employee, [the attending nurse], did not adequately collect and/or communicate to other health care providers pertinent medical information necessary for the treatment and care of [decedent] on April 30th of 2012.
 

 The fifth contention is that the hospital did not provide health care in accordance with the standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time the health care was rendered, and that the defendant did not adequately
 
 implement and/or follow
 
 the protocols, processes, procedures and/or policies in place in the emergency department on April 30th of 2012.
 

 The sixth contention is that the hospital did not provide health care in accordance with the standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time the health care was rendered, and that its employee, [the attending nurse], did not adequately collect and/or communicate to other medical providers pertinent medical information necessary for the treatment and care of [decedent] on April 30th of 2012. (Emphasis added).
 

 The trial court then went on to instruct as follows:
 

 With respect to the plaintiff's first contention, a hospital has a duty to use its best judgment in the treatment and
 
 *552
 
 care of its patient. A violation of this duty is negligence. With respect to the plaintiff's second contention, a nurse has a duty to use her best judgment in the treatment and care of her patient. A violation of this duty is negligence. With respect to the plaintiff's third contention, a hospital has a duty to use reasonable care and diligence in the application of its knowledge and skill to its patient's care. A violation of this duty is negligence.
 

 With respect to the plaintiff's fourth contention, a nurse has a duty to use reasonable care and diligence and the application of her knowledge and skill to her patient's care. A violation of this duty is negligence. With respect to the plaintiff's fifth contention, a hospital has a duty to provide health care in accordance with the standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time the health care is rendered. In order for you to find that the hospital did not meet this duty, the plaintiff must satisfy you by the greater weight of the evidence, first, what the standards of practice were among hospitals with similar resources and personnel in the same or similar communities at the time the defendant cared for [decedent], and, second, that the defendant did not act
 
 *583
 
 in accordance with those standards of practice. ... A violation of this duty is negligence.
 

 With respect to the defendant's sixth contention, a nurse has a duty to provide health care in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time the health care is rendered. In order for you to find that the defendant's employee, [the attending nurse], did not meet this duty, the plaintiff must satisfy you by the greater weight of the evidence, first, what the standards of practice were among members of the same health care profession with similar training and experience situated in the same or similar communities at the time [the attending nurse] cared for [decedent]. And, second, that [the attending nurse] did not act in accordance with those standards of practice. ... A violation of this duty is negligence.
 

 *553
 
 In response to defendant's argument that the inclusion of "implement" intermingled the administrative negligence and medical negligence claims, plaintiff cites Merriam-Webster in support of its' contention that "implement" and "follow" are nearly synonymous in meaning. Therefore, plaintiff asserts the trial court did not err in using both terms in the jury instructions. Plaintiff also claims that
 
 Blanton v. Moses H. Cone Mem'l Hosp., Inc.
 
 ,
 
 319 N.C. 372
 
 , 376,
 
 354 S.E.2d 455
 
 , 458 (1987), directly supports inclusion of "implement" in the instructions. We are not convinced the inclusion of "implement" in the instructions for medical negligence was not error. First, "implement" is never mentioned in
 
 Blanton
 
 . Second, while "implement" and "follow" may be used similarly in some circumstances, they may also be used differently. It is evident from the use of both "implement" and "follow" in the instructions above in the alternative that the terms are not synonymous in this instance.
 

 Nevertheless, when these instructions are considered in their entirety, it is clear that the medical negligence instructions directed the jury to consider the treatment and care provided by defendant to decedent. Although defendant is correct that implementation of protocols, processes, procedures and/or policies is usually an administrative duty, the use of "implement" three times in the above instructions in the alternative to "follow" was not likely to mislead the jury when the instructions are considered in their entirety. Defendant has failed to show that the trial court's error in allowing the administrative negligence claim to proceed impacted the jury instructions to its detriment where ample evidence was presented that defendant failed to follow its policies and that the attending emergency department nurse did not collect or communicate pertinent medical information for decedent's care.
 

 In regards to the evidence at trial, defendant contends the admission of documents related to defendant's application for accreditation as a Chest Pain Center and other evidence of policies and protocols was only relevant to the administrative negligence claim, if at all, and would not have been admitted if plaintiff's action was only for medical negligence. Defendant asserts that this improper evidence "inflamed and prejudiced the jury against the hospital, ultimately impacting the jury's determination on both negligence claims."
 

 While evidence of policies and protocols may not necessarily establish the standard of care,
 
 see
 

 O'Mara v. Wake Forest Univ. Health Sciences
 
 ,
 
 184 N.C. App. 428
 
 , 439,
 
 646 S.E.2d 400
 
 , 406 (2007) (explaining that "violation of a hospital's policy is not necessarily a violation of the applicable standard of care, because the hospital's rules and policies
 
 *554
 
 may reflect a standard that is above or below what is generally considered by experts to be the relevant standard"), evidence of the defendant's policies and protocols, or its purported policies and protocols, is certainly relevant and properly considered alongside expert testimony to establish the standard of care for medical negligence. As defendant points out, expert testimony in this case clarified which policies and protocols were in place at CMC-Northeast.
 

 Although not all evidence of policies and protocols related to the defendant's application for accreditation as a Chest Pain
 
 *584
 
 Center may have been admitted into evidence absent the trial court allowing the administrative negligence claim to proceed, defendant has not shown that the evidence impacted the jury's verdict on medical negligence. This Court has long recognized that "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial."
 
 State v. Ferguson
 
 ,
 
 145 N.C. App. 302
 
 , 307,
 
 549 S.E.2d 889
 
 , 893,
 
 disc. review denied
 
 ,
 
 354 N.C. 223
 
 ,
 
 554 S.E.2d 650
 
 (2001). Defendant's assertion that "the inflammatory nature of the evidence relating to the Chest Pain Center application was palpable and highly prejudicial" is not sufficient proof.
 

 Defendant summarily claims that "absent this evidence ... no rational jury would have returned a $6.13 million verdict against the hospital based solely on [the nurses] alleged negligence in communicating the decedent's information to [the attending physician]." We are not convinced.
 

 3.
 
 Pain and Suffering
 

 In the event we did not reverse outright or grant a new trial, defendant alternatively asserts the trial court erred in allowing the jury to award damages for pain and suffering because there was insufficient evidence of pain and suffering.
 

 The issue of pain and suffering was argued numerous times during trial before the trial court allowed the issue to go to the jury. Defendant first moved for a directed verdict on damages for "conscious pain and suffering" after it reviewed plaintiff's proposed jury instruction. Defendant argued "there was no evidence put on as to any conscious pain and suffering of [decedent]." The trial court asked if either party would like to be heard and both responded in the negative. The trial court then stated that it "would grant [a] directed verdict on that issue because there has been no evidence as to pain and suffering of [decedent] ...."
 

 Immediately thereafter, plaintiff indicated that it would like to be heard on the issue of pain and suffering, and the trial court obliged.
 

 *555
 
 Plaintiff admitted that no one was around decedent to observe pain and suffering, but argued that does not mean it didn't happen. Plaintiff pointed out that one doctor testified decedent could have experienced pain for an hour prior to his death, a second doctor testified decedent could have experienced pain for 20 minutes prior to his death, and a third doctor testified he didn't know one way or the other. Plaintiff then concluded its argument stating:
 

 So there is evidence of conscious pain and suffering. Well, there's evidence that it could have existed, but I don't think that the jury should be precluded from considering that because there was evidence that -- nobody really knows because nobody observed it, but there certainly is evidence that it could have occurred from defendant's witnesses and also for plaintiff's witnesses.
 

 In response, defendant argued "possibly or could have ... does not meet the burden of proof in terms of more likely than not [decedent] had conscious pain and suffering[,]" adding that evidence of "more likely than not" is "what they would need to submit to support any jury award for that element. A mere possibility or that it could have happened would not meet the burden of proof." Upon consideration of the arguments, the trial court "once again [found] that there has not been sufficient evidence of conscious pain and suffering to meet the legal standard" and granted defendant's motion for a directed verdict on damages for pain and suffering.
 

 Plaintiff then changed its argument and sought for a third time to address the issue of pain and suffering, arguing that decedent experienced pain and suffering from the time he was first admitted to the emergency department and as a result of anxiety from being discharged without answers. For a third time, the trial court granted defendant's motion for a directed verdict on damages for pain and suffering.
 

 Following the weekend recess, plaintiff again raised the issue by objecting to the trial court's prior rulings when the proceedings reconvened. At that point, plaintiff had revisited the testimony of Dr. Andrew Selwyn and was able to direct the court to the doctor's testimony that it was more likely than not that decedent would have experienced chest pain. Defendant simply responded
 
 *585
 
 that there was no evidence of actual chest pain. Based on the plaintiff's argument, the trial court changed its ruling, explaining that "there is some evidence so ... it is a factual issue. ... [W]e'll need to put the pain and suffering back in the instructions ... for the jury to make that determination."
 
 *556
 
 Now on appeal, defendant contends the only relevant evidence, Dr. Selwyn's testimony, amounts to speculation. Defendant therefore claims the evidence failed to meet plaintiff's burden to support an award of damages for pain and suffering.
 

 "The law disfavors-and in fact prohibits-recovery for damages based on sheer speculation."
 
 DiDonato v. Wortman
 
 ,
 
 320 N.C. 423
 
 , 430,
 
 358 S.E.2d 489
 
 , 493 (1987) (internal citations omitted). Both plaintiff and defendant acknowledge that "[d]amages must be proved to a reasonable level of certainty, and may not be based on pure conjecture."
 
 Id
 
 . at 431,
 
 358 S.E.2d at 493
 
 . In
 
 DiDonato
 
 , the Court relied on its much earlier decision in
 
 Norwood v. Carter
 
 ,
 
 242 N.C. 152
 
 ,
 
 87 S.E.2d 2
 
 (1955), in which the Court held, "[n]o substantial recovery may be based on mere guesswork or inference ... without evidence of facts, circumstances, and data justifying an inference that the damages awarded are just and reasonable compensation for the injury suffered."
 
 Id
 
 . at 156,
 
 87 S.E.2d at 5
 
 . Based on this reasoning, the Court held in
 
 DiDonato
 
 that "damages for the pain and suffering of a decedent fetus are recoverable if they can be reasonably established."
 
 320 N.C. at 432
 
 ,
 
 358 S.E.2d at 494
 
 .
 

 In this case, the only testimony identified by plaintiff as supporting the award damages for pain and suffering was as follows:
 

 Q. Is there any relevance to the fact that [decedent] had presented with chest pain earlier that day as to whether that same chest pain would have arisen before he really got in trouble with this event?
 

 A. Yes, it's relevant.
 

 Q. And tell us why that's relevant.
 

 A. Well, he presented with a fairly typical picture of chest pain radiating to the stomach, up into the neck, to the hands, which went away with nitroglycerin. So that's the way this man presents. So somewhere around 8, 9 or 9, 10, 11 o'clock that night, more likely than not he would have got chest pain again and manifested ischemia, which would have been treated. Unfortunately, he was at home, it wasn't treated, and it just progressed and he died.
 

 Q. So because he had previously presented with chest pains from ischemia, more likely than not that would have occurred again giving warning to the staff, if he was at the hospital, if that situation arose?
 

 *557
 
 A. Yes.
 

 Defendant contends this testimony was insufficient because it is speculative. Defendant also points to conflicting testimony. Plaintiff contends this testimony was sufficient proof to a reasonably degree of certainty because Dr. Selwyn testified that it was "more likely than not."
 

 Although we agree with plaintiff that testimony that something "is more likely than not" is generally sufficient proof that something occurred, Dr. Selwyn's testimony, standing alone, is insufficient to support proof of damages for pain and suffering to a reasonable degree of certainty where there was no further evidence for the jury to consider. And while it is not this Court's job to reweigh the evidence, we do note that ample other evidence was presented to show that plaintiff may not have experienced any further chest pain. Dr. Selwyn even testified that there was "no direct evidence" of chest pain following decedent's discharge from the emergency department. Where the only evidence is that it was likely decedent experienced chest pain because he had previously experienced chest pain, we hold the evidence was insufficient to establish damages for pain and suffering to a reasonable degree of certainty.
 

 The trial court instructed the jury that "[n]oneconomic damages are damages to compensate for pain, suffering, emotional distress, loss of consortium, inconvenience and any other non-pecuniary compensatory damage." The trial court then instructed the jury that it may consider the following categories
 
 *586
 
 of non-economic damages in this case: "[p]ain and suffering and the present monetary value of [decedent] to his next of kin from his society, companionship, comfort, guidance, kindly offices, advice, protection, care or assistance from the services that he provided for which you do not find a market value." Defendant has only challenged the sufficiency of the evidence for pain and suffering.
 

 Because the jury verdict in this case only separated the damages into economic damages and non-economic damages and did not further break down the non-economic damages by categories, it is impossible to determine what portion of the jury's award of non-economic damages was for pain and suffering. As a result, this Court cannot just vacate the award of damages for pain and suffering, but instead must remand for a new trial on the issue of non-economic damages.
 

 4.
 
 Contributory Negligence
 

 Lastly, defendant argues in the alternative that if it is not entitled to an outright reversal or a new trial, the trial court erred in granting
 
 *558
 
 plaintiff's motion for a directed verdict on defendant's contributory negligence defense. Plaintiff moved for a directed verdict on contributory negligence at the close of all the evidence and the trial granted plaintiff's motion, finding that no evidence of contributory negligence by the decedent had been presented.
 

 "[C]ontributory negligence is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains."
 
 Watson v. Storie
 
 ,
 
 60 N.C. App. 736
 
 , 738,
 
 300 S.E.2d 55
 
 , 57 (1983) (internal quotation marks and citations omitted). Our Supreme Court has explained that
 

 [i]n this state, a plaintiff's right to recover ... is barred upon a finding of contributory negligence. The trial court must consider any evidence tending to establish plaintiff's contributory negligence in the light most favorable to the defendant, and if diverse inferences can be drawn from it, the issue must be submitted to the jury. If there is more than a scintilla of evidence that plaintiff is contributorily negligent, the issue is a matter for the jury, not for the trial court.
 

 Cobo v. Raba
 
 ,
 
 347 N.C. 541
 
 , 545,
 
 495 S.E.2d 362
 
 , 365 (1998) (internal citations omitted).
 

 In this case, defendant contends there was substantial evidence from which the jury could reasonably find that decedent was contributorily negligent. Defendant then identifies decedent's failure to report to the attending nurse and the attending physician that he was given aspirin and nitroglycerin for his chest pain by EMS prior to this arrival at the emergency department. Defendant compares this case to cases in which patients failed to report their symptoms, or the worsening of symptoms, to their healthcare providers.
 
 See
 

 Cobo
 
 ,
 
 347 N.C. at 546
 
 ,
 
 495 S.E.2d at
 
 366 ;
 
 McGill v. French
 
 ,
 
 333 N.C. 209
 
 , 220-21,
 
 424 S.E.2d 108
 
 , 114-15 (1993) ;
 
 Katy v. Capriola
 
 ,
 
 226 N.C. App. 470
 
 , 478,
 
 742 S.E.2d 247
 
 , 253-54 (2013). Under these precedents, defendant contends decedent had an affirmative duty to report that EMS gave him medication in the ambulance.
 

 We are not convinced that this case is similar to those cases cited by defendant. There is no indication that decedent in this case failed to report his symptoms to medical personnel. In fact, the evidence shows that decedent was involved in his treatment and sought answers for his continuing discomfort. Moreover, we are not convinced that the failure
 
 *559
 
 to report symptoms is analogous to decedent not reporting that EMS gave him medication to relieve his chest pain in route to the hospital. We agree with the trial court that there was no evidence of contributory negligence on the part of decedent in this case. Thus, the trial court did not err in granting plaintiff's motion for a directed verdict on the issue.
 

 III.
 
 Conclusion
 

 For the reasons stated, we hold the trial court erred in allowing plaintiff to proceed at trial on a theory of administrative negligence. That error, however, did not prejudice the jury verdict on plaintiff's medical negligence claim. The trial court also erred in allowing the jury to award damages for pain and suffering and, therefore, a new trial is required on non-economic damages only. The trial court did not err in granting plaintiff's
 
 *587
 
 motion for a directed verdict on the issue of contributory negligence.
 

 REVERSE IN PART, VACATE IN PART, NEW TRIAL IN PART.
 

 Judge INMAN concurs.
 

 Judge MURPHY concurs in result only.
 

 [1]
 

 It appears that, at some point prior to the case being tried, decedent's widow was dismissed from the action as her name does not appear on the judgment or orders.
 

 [2]
 

 Defendant also cites this Court's unpublished decision in
 
 Barbee v. WHAP, P.A.
 
 , --- N.C. App. ----,
 
 803 S.E.2d 701
 
 , COA16-1154 (2017) (unpub.), available at
 
 2017 WL 3481038
 
 , *7-11 (holding that the plaintiff's expert witness failed to demonstrate familiarity with the relevant community standard of care after the witness testified during a deposition that he had never been to the area, knew nothing about the hospital, knew nothing about the training and experience of the doctors at the hospital, and did not know any doctors in the State).