IN THE SUPREME COURT OF NORTH CAROLINA

No. 18PA19

Filed 25 September 2020

THE ESTATE OF ANTHONY LAWRENCE SAVINO

v.

THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, a North Carolina Hospital Authority, d/b/a CAROLINAS HEALTHCARE SYSTEM and CMC-NORTHEAST.

On discretionary review pursuant to N.C.G.S. § 7A-31 of the unanimous decision of the Court of Appeals, 262 N.C. App. 526, 822 S.E.2d 565 (2018), reversing in part, and vacating in part, a judgment entered 8 December 2016 and orders entered 19 January 2017 by Judge Julia Lynn Gullett in Superior Court, Cabarrus County. On 9 May 2019 the Supreme Court allowed both plaintiff's petition for discretionary review and defendant's conditional petition for discretionary review. Heard in the Supreme Court on 7 January 2020.

> *Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew, Robert E. Zaytoun and John R. Taylor; and Brown Moore & Associates, PLLC, by R. Kent Brown, Jon R. Moore, Paige L. Pahlke, for plaintiff.*
>
> *Bradley Arant Boult Cummings, LLP, by Robert R. Marcus, Brian Rowlson and Jonathan Schulz; and Horack Talley Pharr & Lowndes, PA, by Kimberly Sullivan, for defendant.*
>
> *Patterson Harkavy, LLP, by Burton Craige, Trisha S. Pande, and Narendra K. Ghosh, for North Carolina Advocates for Justice, amicus curiae.*

HUDSON, Justice.

Pursuant to plaintiff's petition for discretionary review, we address whether the Court of Appeals erred by reversing the trial court's denial of defendant's motion for a directed verdict on pain and suffering damages. We also allowed review of

plaintiff's additional issue per North Carolina Rule of Appellate Procedure 15(d): whether the Court of Appeals erred in holding that plaintiff failed to properly plead administrative negligence under N.C.G.S. § 90-21.11(2)(b). In addition, we allowed defendant's conditional petition for discretionary review of two issues: (1) whether defendant was entitled to a new trial because it was prejudiced by the intertwining of plaintiff's evidence and the trial court's instruction to the jury on medical negligence and administrative negligence; and (2) whether the trial court erred by granting plaintiff's motion for a directed verdict on contributory negligence.

We modify and affirm in part, and reverse in part, the decision of the Court of Appeals because we conclude that (1) the trial court did not err by denying defendant's motion for a directed verdict on pain and suffering damages; (2) plaintiff was not required to plead a claim for administrative negligence separate from medical negligence; (3) defendant is not entitled to a new trial; and (4) the trial court did not err by granting plaintiff's motion for a directed verdict on contributory negligence.

Factual and Procedural Background

Just after 1:30 p.m. on 30 April 2012, Cabarrus County EMS was dispatched to the residence of Anthony Lawrence Savino. When EMS arrived, Mr. Savino was complaining of chest pain that was radiating down both of his arms and causing tingling and numbness. EMS checked his blood pressure and other vital signs in his residence before taking him into the ambulance. In the ambulance, EMS personnel performed an electrocardiogram which showed a normal sinus rhythm; this indicated

that Mr. Savino was not currently having a heart attack. EMS gave him an I.V., four baby aspirin, and sublingual nitroglycerin, and notified CMC-Northeast that they were bringing him in as a chest pain patient.

On the way to the hospital, EMT Kimberly Allred prepared a document called an "EMS snapshot," which provides a quick summary of the care that EMS provided to a patient; the snapshot is usually left with the intake nurse at the hospital. In the snapshot, EMT Allred included Mr. Savino's demographics, vitals, and a description of the care provided to Mr. Savino en route to the hospital, including the medications he was given. Plaintiff alleges that this snapshot and the information it contained was never given nor communicated to his treating physician.

A few hours after arriving in the emergency room, Mr. Savino was discharged. Later that evening, his wife found him unresponsive in their home after he suffered a heart attack. Mr. Savino could not be resuscitated by EMS and was pronounced dead on the scene.

On 23 April 2014, Mr. Savino's Estate (plaintiff) filed a Complaint for Medical Negligence (the 2014 Complaint) against The Charlotte-Mecklenburg Hospital Authority, Carolinas Healthcare System, CMC-Northeast, the attending emergency physician, and the attending physician's practice. Defendants responded by filing an answer to the complaint. Then, on 2 January 2016, plaintiff filed a motion for leave to amend the 2014 Complaint in light of documents produced by defendant and depositions taken after the production of the documents. Plaintiff asserted that the

2014 Complaint provided defendants with sufficient notice of its negligence allegations and that plaintiff was seeking to file an Amended Complaint "out of an abundance of caution." But on 12 January 2016, plaintiff withdrew the motion for leave to amend the complaint. On 19 January 2016, plaintiff filed a notice of voluntary dismissal of all claims against all parties, but without prejudice to re-file against defendants.

Plaintiff filed another "Complaint for Medical Negligence," (the 2016 Complaint) naming only The Charlotte-Mecklenburg Hospital Authority, Carolinas Healthcare System, and CMC-Northeast (collectively, "defendant"), on 1 February 2016. Defendant filed its answer on 5 April 2016.

During a hearing on pre-trial motions, plaintiff and defendant disputed whether the case involved two *theories* of medical negligence or two separate *claims* of medical and administrative negligence. Plaintiff argued that the 2016 Complaint contained both allegations that defendant did not meet the standard of care in "the delivery and provision of medical care" and allegations that defendant "failed to comply with its corporate duty or administrative duty." Plaintiff argued that both of these theories were part of the same medical negligence claim under N.C.G.S. § 90-21.11(2) (2011). Defendant argued, however, that only the first theory of medical negligence was alleged in the 2016 Complaint and then proceeded to object throughout the trial that plaintiff had not pled a separate administrative negligence claim.

The case was tried to the jury from 24 October 2016 through 15 November 2016. Plaintiff's theory of negligence at trial rested on the "hand-off" between EMS and CMC-Northeast which resulted in neither the EMS snapshot, nor the information contained within it—including Mr. Savino's chief complaint of chest pain and the fact that he was treated with aspirin and nitroglycerin—being given or communicated to his treating physician.

At the close of plaintiff's evidence, defendant moved for a directed verdict on two grounds: (1) the evidence was insufficient to support plaintiff's medical negligence claims; and (2) plaintiff failed to properly plead its claim that defendant was negligent in its monitoring and supervision.[1] The trial court denied the motion. Defendant renewed the motion for a directed verdict at the close of all evidence, and the trial court again denied it.

On 15 November 2016, the jury returned verdicts finding that decedent's death was caused by defendant's (1) negligence; and (2) negligent performance of administrative duties. The jury awarded plaintiff $6,130,000 in total damages: $680,000 in economic damages and $5,500,000 in non-economic damages. The trial court entered judgment in these amounts. Following the entry of judgment, the trial court entered another order determining that plaintiff was entitled to recover (1)

---

[1] In the alternative, defendant argued that even if plaintiff had properly pled the negligent monitoring and supervision claim, that claim was time-barred because that allegation was not in the original 2014 Complaint.

$15,571.53 from defendant in costs; and (2) $417,847.15 in pre- and post-judgment interest.

On 16 December 2016, defendant filed a motion for either judgment notwithstanding the verdict (JNOV) or for a new trial. The trial court denied the motions in orders filed on 19 January 2017. Defendant appealed.

The Court of Appeals reversed in part and vacated in part the orders of the trial court; it also granted a new trial in part. *Estate of Savino v. Charlotte-Mecklenburg Hosp. Auth.*, 262 N.C. App. 526, 822 S.E.2d 565 (2018). First, the Court of Appeals held that the testimony of plaintiff's expert was insufficient to support the jury's award for pain and suffering. *Id.* at 557, 822 S.E.2d at 586. As a result—and because the jury's verdict did not allow the court to determine which portion of the non-economic damages consisted of the pain and suffering damages—the Court of Appeals remanded for a new trial on non-economic damages. Second, the Court of Appeals held that plaintiff did not sufficiently plead "administrative negligence." *Id.* at 534, 822 S.E.2d at 572. Specifically, it concluded that the allegations in the 2016 Complaint "were not sufficient to put defendant on notice of a claim of administrative negligence" and thus, "the trial court erred in allowing plaintiff to proceed on an administrative negligence theory in the medical malpractice action." *Id.* at 541, 822 S.E.2d at 576. However, the Court of Appeals held that the jury's verdict was not tainted by plaintiff being allowed to proceed on the administrative negligence theory, and thus that no new trial was required on this issue. *Id.* at 549–50, 822 S.E.2d at

581. Finally, the Court of Appeals held that the trial court did not err in granting a directed verdict to plaintiff on the issue of contributory negligence because Mr. Savino did not have "an affirmative duty to report that EMS gave him medication in the ambulance." *Id.* at 558–559, 822 S.E.2d at 586.

For the reasons discussed herein, we modify and affirm in part, and reverse in part, the decision of the Court of Appeals.

<u>Analysis</u>

On the issues presented by plaintiff, we conclude that (1) the Court of Appeals erred by reversing the trial court's denial of defendant's motion for a directed verdict on pain and suffering damages; and (2) plaintiff properly pled a medical negligence claim, but did not allege a separate claim for administrative negligence. On the issues presented by defendant, we conclude that (1) defendant is not entitled to a new trial; and (2) the trial court did not err by granting plaintiff's motion for a directed verdict on contributory negligence.

I. <u>Standard of Review</u>

The standard of review for a motion for directed verdict and a motion for judgment notwithstanding the verdict (JNOV) is the same. *Green v. Freeman*, 367 N.C. 136, 140, 749 S.E.2d 262, 267 (2013) (citing *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991)). Accordingly, we must determine "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Id.* at 140, 749 S.E.2d at 267 (quoting

*Davis*, 330 N.C. at 322, 411 S.E.2d at 138). "If 'there is evidence to support each element of the nonmoving party's cause of action, then the motion for directed verdict and any subsequent motion for [JNOV] should be denied.'" *Id.* at 140–41, 749 S.E.2d at 267 (quoting *Abels v. Renfro Corp.*, 335 N.C. 209, 215, 436 S.E.2d 822, 825 (1993)). Because the question of whether a party is entitled to a motion for directed verdict or JNOV is one of law, our review is de novo. *Id.* at 141, 749 S.E.2d at 267 (citing *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 512, 742 S.E.2d 781, 786 (2013); *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 720, 693 S.E.2d 640, 643 (2009)).

II.    Pain and Suffering Damages

First, we address the single issue raised in plaintiff's petition for discretionary review: the Court of Appeals' reversal of the trial court order denying defendant's motion for a directed verdict on pain and suffering damages. Because we conclude that plaintiff's expert's testimony presented sufficient evidence of pain and suffering, we hold the trial court did not err, and we reverse the Court of Appeals.

The legal standard for proof of damages is well-established. "Damages must be proved to a reasonable level of certainty, and may not be based on pure conjecture." *DiDonato v. Wortman*, 320 N.C. 423, 431, 358 S.E.2d 489, 493 (1987) (citing *Norwood v. Carter*, 242 N.C. 152, 156, 87 S.E.2d 2, 5 (1955)).

At trial, plaintiff offered testimony from several experts. Dr. Selwyn, an expert cardiologist, testified about Mr. Savino's pain and suffering earlier in the day of 30

April 2012 prior to his death as follows: "[H]e presented with a fairly typical picture of chest pain radiating to the stomach, up into the neck, to the hands, which went away with nitroglycerin." Dr. Selwyn then testified that Mr. Savino "more likely than not . . . would have got chest pain again" before his death.

This expert opinion, based on an analysis of decedent's symptoms and medical records, is precisely the kind of opinion that triers of fact rely on to help them "understand the evidence or to determine a fact in issue." N.C.R.E. 702(a) (2019). This review of decedent's symptoms was not "based on pure conjecture" but provided evidence of decedent's pain and suffering "to a reasonable level of certainty" for the jury to consider. *DiDonato,* 320 N.C. at 431, 358 S.E.2d at 493.

Although the Court of Appeals acknowledged that "testimony that something 'is more likely than not' is generally sufficient proof that something occurred," it concluded that such testimony was not sufficient here. *Savino,* 262 N.C. App. at 557, 822 S.E.2d at 585. This conclusion was in error. Although the Court of Appeals correctly noted that "it [wa]s not [its] job to reweigh the evidence," it nonetheless proceeded to reweigh the evidence by concluding that the testimony of plaintiff's expert "standing alone" was insufficient to prove damages because (1) there was "ample other evidence . . . that plaintiff may not have experienced any further chest pain"; and (2) plaintiff's expert "testified that there was 'no direct evidence' of chest pain following decedent's discharge from the emergency department." *Id.*

The Court of Appeals' reasoning was erroneous for two reasons. First, its weighing of plaintiff's expert's testimony against other evidence that decedent may not have experienced further chest pain contradicts our well-established standard of review of trial court decisions on directed verdicts, which requires appellate courts to disregard contradictory evidence. *See Bowen v. Gardner*, 275 N.C. 363, 366, 168 S.E.2d 47, 49 (1969) (requiring the movant's contradictory evidence to be disregarded when considering a motion for nonsuit); *see also Northern Nat. Life Ins. Co. v. Lacy J. Miller Mach. Co., Inc.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984) ("A verdict may never be directed when there is conflicting evidence on contested issues of fact.").

Second, the Court of Appeals erred in apparently requiring plaintiff's expert to present "direct evidence" of chest pain. *Savino*, 262 N.C. App. at 557, 822 S.E.2d at 585. The evidentiary standard for damages requires only proof "to a reasonable level of certainty." *DiDonato*, 320 N.C. at 431, 358 S.E.2d at 493 (citing *Norwood*, 242 N.C. at 156, 87 S.E.2d at 5). Competent opinion testimony, like Dr. Selwyn's, that "more likely than not" Mr. Savino would have experienced pain before his death, satisfies that standard. Furthermore, direct evidence is not required because circumstantial evidence can satisfy the reasonable probability standard. *See Snow v. Duke Power Co.*, 297 N.C. 591, 597, 256 S.E.2d 227, 231–32 (1979) ("[C]ircumstantial evidence [may be] sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts.").

Accordingly, we conclude that the trial court did not err in denying defendant's motion for a directed verdict on plaintiff's pain and suffering damages. As a result, we reverse the Court of Appeals' holding on this issue, and we reverse its decision to remand this case to the trial court for a new trial on non-economic damages.

III.    Administrative Negligence

Next, we consider defendant's argument that administrative negligence constituted a separate claim that plaintiff failed to properly plead.

Defendant contends that plaintiff was required to plead administrative negligence as a separate claim from medical negligence because in a 2011 amendment to N.C.G.S. § 90-21.11, "the legislature created a distinct cause of action for administrative negligence that must be separately and specifically pled." Defendant argues that because plaintiff "failed to plead a claim for administrative negligence," it was error for the trial court to deny defendant's motion for JNOV. Because we conclude that the 2011 amendment to N.C.G.S. § 90-21.11 did not create a new cause of action or a new pleading requirement for a medical negligence claim like this one, we do not agree that plaintiff was required to plead a separate claim for administrative negligence here. We further conclude that plaintiff did properly plead breaches of administrative duties as a theory underlying the overall claim of medical negligence.

In 2011, the General Assembly amended N.C.G.S. § 90-21.11 to broaden the definition of "medical malpractice action" to include breaches of "administrative or

corporate duties to the patient" that arise from the same set of facts as a traditional

"professional services" medical malpractice claim. Act of July 25, 2011, S.L. 2011-400

§ 5, 2011 N.C. Sess. Laws, 1712, 1714. Specifically, the amendment added the

following subsection to the definition of "Medical malpractice action" in N.C.G.S. §

90-21.11(2):

> (b) A civil action against a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes for damages for personal injury or death, when the civil action (i) alleges a breach of administrative or corporate duties to the patient, including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.

It appears from contemporaneous committee reports and session laws, as well

as subsequent analysis by the UNC School of Government, that the purpose of this

specific part of a more comprehensive medical liability reform bill was to require that

lawsuits which seek recovery for negligence in operating a hospital, nursing home, or

adult care home, be treated as "medical malpractice" claims rather than ordinary

negligence claims. *See* UNC School of Government, *Bill Summaries: S33 (2011-2012*

*Session), Summary date: Apr 19 2011*, Legislative Reporting Service,

https://lrs.sog.unc.edu/bill-summaries-lookup/S/33/2011-2012%20Session/S33 ("Adds

a section amending GS 90-21.11 to clarify definitions for health care provider and

medical malpractice action; applies to causes of action arising on or after October 1,

2011."); Act of July 25, 2011, S.L. 2011-400 § 5 (providing the overall context of the reform legislation); Ann M. Anderson, *Rule 9(j) of the Rules of Civil Procedure: Special Pleading in Medical Malpractice Claims*, North Carolina Superior Court Judges' Benchbook (March 2014) (discussing how the amendment recategorizes some administrative negligence claims arising out of the same facts and circumstances as a medical negligence claim). Prior to this amendment, such administrative or corporate negligence claims were often treated as ordinary negligence claims. Anderson, at 4 (citing *Estate of Ray v. Forgy*, 227 N.C. App. 24, 31, 744 S.E.2d 468, 472 (2013) (claim against hospital for failure to monitor and oversee credentialing of physician treated as ordinary negligence); *Estate of Waters v. Jarman*, 144 N.C. App. 98, 103, 547 S.E.2d 142, 145 (2011) (common law corporate negligence claim against a hospital treated as ordinary negligence)). Since the 2011 amendment, claims of administrative negligence against hospitals, nursing homes, or adult care homes that arise from the same facts and circumstances as a claim for furnishing or failing to furnish professional health services have been classified as medical malpractice suits, and thus are required to adhere to the much more detailed requirements of North Carolina Civil Procedure Rule 9(j) than claims for ordinary negligence.[2] Thus, we agree with the Court of Appeals that the legislature did not "intend[] to create a new

---

[2] Claims of administrative negligence against hospitals, nursing homes, or adult care homes that *do not* arise from the same facts and circumstances as a claim for furnishing or failing to furnish professional health services may still be subject to the common law requirements of ordinary negligence.

cause of action by the 2011 amendment, but rather intended to re-classify administrative negligence claims against a hospital as a medical malpractice action so that they must meet the pleading requirements of a medical malpractice action rather than under a general negligence theory." *Savino*, 262 N.C. App. at 536, 822 S.E.2d at 573.

Therefore, to the extent that defendant's arguments presuppose that plaintiff was required to separately allege a claim for administrative negligence, we do not agree. Plaintiff brought suit against defendant alleging medical negligence, and the 2011 amendment to N.C.G.S. § 90-21.11 had no effect on medical negligence claims like plaintiff's.

In general, a complaint is required to contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C. R. Civ. P. 8. (2019). We have interpreted this language as establishing a "notice pleading" standard. *U.S. Bank Nat'l Ass'n v. Pinkey*, 369 N.C. 723, 728, 800 S.E.2d 412, 416 (2017). Accordingly, "the complaint 'is adequate if it gives sufficient notice of the claim asserted "to enable the [defendant] to answer and prepare for trial . . . and to show the type of case brought." ' " *Id.* at 728, 800 S.E.2d at 416 (quoting *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970)). "While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the

substantive elements of a legally recognized claim . . . ." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 205, 367 S.E.2d 609, 612 (1988) (citing *Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E.2d 611, 626 (1979)).

The action began with plaintiff's filing of the 2016 Complaint after it voluntarily dismissed its 2014 Complaint. In the 2016 Complaint, titled "Complaint for Medical Negligence," plaintiff alleged that defendant was negligent in its failure to

> a. [T]imely and adequately assess, diagnose, monitor, and treat the conditions of Plaintiff's Decedent so as to render appropriate medical diagnosis and treatment of his symptoms;
>
> b. [P]roperly advise Plaintiff's Decedent of additional medical and pharmaceutical courses that were appropriate and should have been considered, utilized, and employed to treat Plaintiff's Decedent's medical condition prior to discharge;
>
> c. [T]imely obtain, utilize and employ proper, complete and thorough diagnostic procedures in the delivery of appropriate medical care to Plaintiff's Decedent;
>
> d. [E]xercise due care, caution and circumspection in the diagnosis of the problems presented by Plaintiff's Decedent;
>
> e. [E]xercise due care, caution and circumspection in the delivery of medical and nursing care to Plaintiff's Decedent;
>
> f. [A]dequately evaluate Plaintiff's Decedent response/lack of response to treatment and report findings;

g. [F]ollow accepted standards of medical care in the delivery of care to Plaintiff's Decedent;

h. [U]se their best judgment in the care and treatment of Plaintiff's Decedent;

i. [E]xercise reasonable care and diligence in the application of his/her/their knowledge and skill to Plaintiff's Decedent care;

j. [R]ecognize, appreciate and/or react to the medical status of Plaintiff's Decedent and to initiate timely and appropriate intervention, including but not limited to medical testing, physical examination and/or appropriate medical consultation;

k. . . .

l. [P]rovide health care in accordance with the standards of practice among members of the same health care professions with similar training and experience situated in the same or similar communities at the time the health care was rendered to Plaintiff's Decedent.

These alleged acts of negligence in the 2016 Complaint all relate to the "performance of medical . . . or other health care" by "health care provider[s]" working in CMC-Northeast. N.C.G.S. § 90-21.11(2)(a) (2011). As a result, the allegations state a claim for medical negligence.

As part of its case to prove medical negligence, plaintiff presented evidence at trial on the applicable standard of care. This evidence included documents defendant had previously submitted as part of an application to gain accreditation as a Chest Pain Center. Plaintiff also offered expert testimony that the policies and protocols within the Chest Pain Center application documents were consistent with the

standard of care applicable to Mr. Savino's clinical care in defendant's emergency department. To the extent plaintiff argued that the hospital violated the applicable standard of care by failing to implement or follow appropriate health care policies and protocols as outlined in these documents, we agree with the Court of Appeals that this argument was directly relevant to the medical negligence claim. *Savino*, 262 N.C. App. at 554, 822 S.E.2d at 583 ("[E]vidence of the defendant's policies and protocols, or its purported policies and protocols, is certainly relevant and properly considered alongside expert testimony to establish the standard of care for medical negligence.").

Furthermore, the complaint provided defendant with sufficient notice of the fact that plaintiff intended to use the policies and protocols from the Chest Pain Center application documents as part of its claim for medical negligence. Specifically, plaintiff alleged in the 2016 Complaint that defendant had submitted an application for "accreditation as a Chest Pain Center and was approved for such accreditation at the time of the events complained of." The complaint also included allegations that as part of the Chest Pain Center application, defendant attested that "it employed certain protocols, clinical practice guidelines, and procedures in the care of patients presenting with chest pain complaints" replicating "the existing standards of practice for medical providers and hospitals in the same care profession with similar training and experience situated in similar communities with similar resources at the time of the events giving rise to this cause of action." Plaintiff then alleged that defendant failed to "[p]rovide health care in accordance with the standards of practice among

members of the same health care professions with similar training and experience situated in the same or similar communities at the time the health care was rendered to Plaintiff's Decedent." These allegations were "sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C. R. Civ. P. 8(a)(1).

We agree with the Court of Appeals that plaintiff did not plead a separate claim for administrative negligence.[3] *See* 262 N.C. App. at 534, 822 S.E.2d at 572. But plaintiff was not required to do so. Rather, plaintiff used multiple theories, including some administrative failures, to argue a single cause of action: medical negligence. Therefore, the trial court did not err by denying defendant's motion for JNOV and defendant is not entitled to a new trial.[4] We modify and affirm the decision of the Court of Appeals as to this issue.

IV.    Contributory Negligence

Finally, we address the issue of contributory negligence raised in defendant's conditional petition for discretional review. We conclude that the trial court did not

---

[3] Because we conclude that plaintiff was not required to plead a separate administrative negligence claim under N.C.G.S. § 90-21.11(2), we need not address defendant's argument that such a claim was time-barred.

[4] We do not address the Court of Appeals' holding about the effect of the intertwining of medical and administrative negligence because we conclude the trial court did not err in denying defendant's motion for JNOV, and therefore do not reach the issue of prejudice. However, we do note that section (2)(b) requires that to be classified as medical malpractice, alleged administrative shortcomings must arise from the same facts or circumstances underpinning the medical negligence.

err in granting plaintiff's motion for a directed verdict on defendant's claim of contributory negligence.

As we have previously explained, "gross negligence is a higher degree of negligence than ordinary negligence, and [ ] wilful and wanton and reckless conduct is still a higher degree of negligence or a greater degree of negligence than the negligence of gross negligence, so much so that in the wilful, wanton, and reckless conduct, the matter of contributory negligence, which might otherwise be interposed as a defense, is wiped out." *Crow v. Ballard*, 263 N.C. 475, 477, 139 S.E.2d 624, 626 (1965).

Here, the jury found that defendant's conduct in providing medical care to Mr. Savino was "in reckless disregard of the rights and safety of others." Defendant did not challenge this finding. Accordingly, defendant's "reckless conduct . . . wipe[s] out" any alleged defense of contributory negligence. *Crow*, 263 N.C. at 477, 139 S.E.2d at 626.

### Conclusion

We modify and affirm in part, and reverse in part, the decision of the Court of Appeals because we conclude that (1) the trial court did not err by denying defendant's motion for a directed verdict on pain and suffering damages; (2) plaintiff was not required to plead a separate claim for administrative negligence; (3) defendant is not entitled to a new trial; and (4) the trial court did not err by granting plaintiff's motion for a directed verdict on contributory negligence. Because we

reverse the Court of Appeals, and thereby uphold the trial court, on the issue of damages for pain and suffering we need not remand to the trial court for a new trial on non-economic damages.

MODIFIED AND AFFIRMED IN PART; REVERSED IN PART.

Justice DAVIS did not participate in the consideration or decision of this case.

Justice NEWBY dissenting.

This medical malpractice action involved a three-and-a-half-week trial. During trial, plaintiff pursued two negligence claims, one for medical negligence and one for administrative negligence. The trial court allowed evidence of and gave jury instructions on both distinct claims of negligence. Both claims were explicitly presented to the jury on the jury verdict form. The administrative negligence claim was neither pled nor properly presented to the jury. Because the trial court admitted a significant amount of extraneous evidence and comingled the jury instructions on medical negligence and administrative negligence, and because the jury clearly found that defendant was guilty of administrative negligence, defendant was prejudiced by the process and should be granted a new trial.

To avoid having to concede that the administrative negligence claim was not properly pled here, the majority judicially restructures medical negligence claims, asserting that administrative negligence is merely a theory underlying medical care negligence. It holds that a plaintiff need not plead a separate claim for administrative negligence. The majority altogether ignores the relevant statutory text and the intent of the General Assembly. In amending the medical malpractice statute in 2011, the General Assembly did not intend to combine these two distinct types of negligence but simply meant to subject both medical care and administrative negligence claims to the same heightened pleading requirement. The majority allows all the evidence

relating to the administrative negligence claim to be considered by the jury to determine if medical care negligence occurred here. Because evidence of administrative negligence and the corresponding jury instructions irredeemably tainted the jury verdict, a new trial is warranted.[1] I respectfully dissent.

Defendant in this case does not dispute that plaintiff properly pled a claim for medical care negligence. In defendant's view, the only claim for medical care negligence actually pled and pursued at trial was whether the admitting nurse failed to relay to the doctor that decedent received nitroglycerin from the EMTs, and, if so, whether that failure to relay the information violated the applicable standard of care. Ultimately, because the doctor allegedly did not know that the decedent had received nitroglycerin and his lab work was normal, the decedent was released but died later that evening.

On 23 April 2014, plaintiff filed an initial "Complaint for Medical Negligence" (2014 Complaint). On 6 January 2016, plaintiff moved for leave to amend the 2014 complaint. In the motion, plaintiff contemplated adding a claim for administrative negligence, citing, *inter alia*, defendant's failure to train, monitor, and supervise employees as well as failure to implement or enforce protocol, policies, and procedures. Nonetheless, plaintiff withdrew the motion and, on 19 January 2016,

---

[1] Because I would conclude that a new trial is warranted, both issues of pain and suffering and contributory negligence would be dependent on the evidence presented at that new trial. Therefore, I do not address those issues in this dissenting opinion.

filed a notice of voluntary dismissal without prejudice to refile against defendant only. Thereafter, on 1 February 2016, plaintiff refiled a "Complaint for Medical Negligence" against defendant (2016 Complaint). In the 2016 Complaint, plaintiff did not include the administrative negligence allegations it asserted in its earlier motion; it simply added a few factual allegations about defendant's status as a Chest Pain Center and its application for accreditation.[2]

Before trial, defendant objected to the administrative negligence claim being presented, noting that the complaint alleged only medical care negligence. The trial court denied defendant's motion in limine to exclude evidence related to administrative negligence.

The case proceeded to trial, which occurred over a three-and-a-half-week period. Plaintiff presented evidence of defendant's alleged medical care negligence, highlighting the nurse's purported failure to communicate that the decedent had received nitroglycerin in the ambulance. Plaintiff also presented a significant amount of evidence related to defendant's alleged administrative negligence. This evidence focused on defendant's failure to properly train medical providers and to implement

---

[2] The majority states that it need not address defendant's arguments that such a claim was time barred since under its reasoning, plaintiff did not need to plead a separate claim for administrative negligence. In its analysis, however, the majority relies on the 2016 Complaint, which cites evidence of Chest Pain Management Center protocols and procedures, which plaintiff presented for the first time in the 2016 Complaint. Even if administrative negligence were merely a theory underlying medical negligence, as the majority proposes, it seems the statute of limitations would be implicated to bar that theory since the theory and the allegations were raised for the first time in the 2016 Complaint.

certain policies, procedures, and protocols that, in plaintiff's view, would have ensured that the proper information was communicated to the ER Physician. In doing so, plaintiff introduced evidence about the credentials required for defendant to become a licensed Chest Pain Center, the application requirements and what the hospital had submitted in its application, and the policies to be implemented. On several occasions, plaintiff highlighted defendant's failure to implement and ensure that the hospital was abiding by Chest Pain Center protocols stated in the application. Plaintiff presented this as amounting to negligence in the application process. Moreover, plaintiff's evidence reiterated that hospital employees were unaware of the risk stratification protocol set forth in the Chest Pain Center application. Under part of plaintiff's theory at trial, had defendant implemented and abided by these protocols, defendant could have saved the decedent's life.

Numerous times during the proceeding, defendant objected that administrative negligence was not properly before the jury since it was not pled in the original 2014 Complaint, nor could it be considered based on the 2016 Complaint because it was time barred. The trial court denied defendant's motions.

During the jury charge conference, defendant objected to the jury instructions, arguing that they improperly presented claims for administrative negligence and comingled administrative negligence with medical care negligence. Nonetheless, the trial court instructed the jury that it could find defendant liable if it found, *inter alia*, that any of the contentions below were true:

With respect to the first issue in this case, the plaintiff contends and the defendant denies that the defendant was negligent in one or more of the following ways. The first contention is that the hospital did not use its best judgment in the treatment and care of its patient in that the defendant did not adequately *implement* [emphasis added] and/or follow protocols, processes, procedures and/or policies for the evaluation and management of chest pain patients in the emergency room on April 30th of 2012, in accordance with the standard of care.

. . . .

The third contention is that the hospital did not use reasonable care and diligence in the application of its knowledge and skill to its patient's care in that Carolinas Healthcare System did not adequately *implement* [emphasis added] and/or follow the protocols, processes, procedures and/or policies for the evaluation and management of chest pain patients in the emergency room or emergency department on April 30th of 2012.

. . . .

The fifth contention is that the hospital did not provide health care in accordance with the standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time the health care was rendered, and that the defendant did not adequately *implement* [emphasis added] and/or follow the protocols, processes, procedures and/or policies in place in the emergency department on April 30th of 2012.

Despite the trial court's failure to separate administrative negligence from medical negligence in its instructions, the jury verdict sheet recognized medical and administrative negligence as two separate issues, first asking the jury whether

decedent's "death [was] caused by the negligence of defendant," and then asking whether decedent's "death [was] caused by the defendant's negligent performance of administrative duties." On 15 November 2016, the jury returned its verdict finding defendant liable for both administrative and medical negligence. The jury awarded $680,000 in economic damages and $5,500,000 in non-economic damages, amounting to a single sum of $6,130,000 in total damages.

Defendant moved for judgment notwithstanding the verdict or for a new trial. In its motion, defendant argued in part that the trial court erroneously comingled the jury instructions on administrative and medical negligence, which ultimately confused the jury and unfairly prejudiced defendant. The trial court denied defendant's motion.

The determinative issue should be whether plaintiff properly pled a claim for administrative negligence, which should be answered in the negative. Based on this answer, the question then becomes what the appropriate remedy is when, in the course of an almost four week trial, evidence of an improperly pled claim is admitted, the jury charge is inaccurate because it comingles both negligence claims, and the jury verdict sheet is wrong because it asks in part whether defendant was liable for administrative negligence. In short, this Court should ask whether the comingling and intertwining of administrative negligence throughout the trial impacted the jury verdict so as to prejudice defendant and entitle defendant to a new trial. Because administrative and medical negligence were inextricably intertwined in the evidence

and instructions here, defendant was prejudiced and there should be a new trial untainted by the evidence of administrative negligence and the accompanying improper jury instruction.

In its analysis, the majority fails to follow the intent of the legislature in amending the statute in 2011. Instead, the majority collapses administrative and medical care negligence into a single negligence claim. This reasoning turns on its head the intent of the General Assembly, which was not to combine the two types of negligence, but to require the same heightened pleading standard for an administrative negligence claim that previously existed for a medical care negligence claim.

Prior to 2011, a claimant with an allegation of medical negligence in the rendering of care for medical services and an allegation of medical negligence arising from administrative negligence had two separate pleading standards. While medical care negligence was subject to the heightened pleading requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure, a claim for medical administrative negligence was subject to the ordinary, non-heightened pleading requirements. Thus, prior to 2011, a medical malpractice action was defined only as a medical care negligence claim, i.e., "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C.G.S. § 90-21.11 (2009).

In 2011, however, while keeping a separate claim for medical care negligence, the North Carolina General Assembly changed the definition of "medical malpractice" to also include a claim for administrative negligence. *See* Act of July 25, 2011, S.L. 2011-400 § 5, 2011 N.C. Sess. Laws, 1712, 1714. The legislature did not intend to combine or blend medical and administrative negligence claims into one claim but simply meant to subject claims of both types of negligence to the same stringent 9(j) pleading standard. Thus, under the current statute, a claim of medical malpractice can arise from medical care or administrative responsibilities:

> a. A civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.
> b. A civil action against a hospital, a [licensed] nursing home . . . , or a[ licensed] adult care home . . . for damages for personal injury or death, when the civil action (i) alleges a breach of administrative or corporate duties to the patient, including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.

N.C.G.S. § 90-21.11(2) (2019).

Consistent with the way the legislature framed both separate claims as recognized in section 90-21.11(2), case law has recognized that there are "two kinds of [corporate hospital negligence] claims: (1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to the negligence in the administration or management of the hospital." *Estate of Ray ex rel.*

*Ray v. Forgy*, 227 N.C. App. 24, 29, 744 S.E.2d 468, 471 (2013) (quoting *Estate of Waters v. Jarman*, 144 N.C. App. 98, 101, 547 S.E.2d 142, 144, *disc. rev. denied*, 354 N.C. 68, 533 S.E.2d 213 (2001)).

Plaintiff failed to plead administrative negligence in its 2014 Complaint and its 2016 Complaint, despite plaintiff's seeming intent to add a claim for administrative negligence when it filed its motion to amend on 6 January 2016. Notably, because medical and administrative negligence are two separate claims, they must be pled separately and proved independently. Because plaintiff failed to plead administrative negligence here, evidence of administrative negligence should not have been admitted at trial and the jury should not have been instructed on the claim.

Because administrative negligence was not properly pled, the question becomes whether evidence of the improperly considered administrative negligence claim, and the corresponding instructions from the trial court, tainted the jury verdict in a way that prejudiced defendant, warranting a new trial. Here a new trial is warranted because it appears the jury based its decision to find defendant liable for medical care negligence on the improperly admitted evidence pertaining to administrative negligence. Further, the instructions blended the two claims.

Error in the jury instructions or uncertainty in the jury verdict warrants a new trial in several situations. When it is unclear "upon what theory or under which part of the [jury] charge the verdict was based, and therefore error in any one of the

instructions . . . may have influenced the jury," defendant is entitled to a new trial. *Morrow v. Southern Ry. Co.*, 147 N.C. 623, 629, 61 S.E. 621, 623 (1908). Also, when a "trial judge inadvertently omit[s] . . . sufficiently definite instructions to guide the[ jury] to an intelligent determination of the question," a new trial is warranted. *Kee v. Dillingham*, 229 N.C. 262, 266, 49 S.E.2d 510, 512 (1948); s*ee also Robertson v. Stanley*, 285 N.C. 561, 569, 206 S.E.2d 190, 196 (1974) (stating that where issues are "inextricably interwoven" within the case, suggesting that the jury awarded damages on an improper ground, a new trial on all issues should be granted); *Hoaglin v. Western Union Telegraph Co.*, 161 N.C. 390, 398–99, 77 S.E. 417, 421 (1913) ("If we could separate the two [jury instructions], because we knew with certainty that the jury were not influenced by the error, we would do so, but it is impossible, as the correct and incorrect instructions have together passed into the verdict which is indivisible. A new trial is the only remedy for the error.").

Therefore, when an appellate court is reviewing a claim

> [o]n appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . ." The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."

*Boykin v. Kim*, 174 N.C. App 278, 286, 620 S.E.2d 707, 713 (2005) (first citing and then quoting *Jones v. Satterfield Dev. Co.*, 16 N.C. App. 80, 86–87, 191 S.E.2d 435, 439, 440, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972); then citing and then quoting *Robinson v. Seaboard Sys. R.R.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917, *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988)).

Defendant submits that the medical negligence claim properly before this Court asked whether the admitting nurse failed to communicate that decedent received nitroglycerin in the ambulance, and if so, whether that failure to communicate this information constituted a violation of the applicable standard of care. The administrative negligence claim presented at trial, however, focused on whether proper procedural safeguards were designed and implemented to prevent this type of communication failure.

The trial court admitted evidence of the admitting nurse's failure to communicate the applicable information, which would relate to plaintiff's properly pled medical negligence claim. The trial court also allowed into evidence testimony and exhibits related to plaintiff's administrative negligence claim, however. At trial, plaintiff introduced a significant amount of evidence about the credentials required for defendant to become a licensed Chest Pain Center, the application requirements, and the policies to be set forth by the hospital in compliance with the Chest Pain Center application requirements. Plaintiff's evidence highlighted defendant's failure to ensure that the hospital was implementing Chest Pain Center protocols and the

representations defendant made in its application. Moreover, testimony about individuals who were unaware of the risk stratification protocol stated in the Chest Pain Center application documents was repeated multiple times throughout trial.

Despite the differences in these claims, the evidence at trial was not separated in a way that the jury could discern which evidence pertained to defendant's alleged liability for medical negligence and which evidence pertained to defendant's alleged liability for administrative negligence. Therefore, the jury was led to believe that it could find decedent's death was caused by either or both medical and administrative negligence, regardless of which evidence supported which claim. Certainly plaintiff's closing argument asserted both kinds of negligence.

Moreover, the jury instructions failed to distinguish between the two different types of negligence. Despite asking the jury on the verdict sheet to separately answer whether defendant was liable for medical negligence and administrative negligence, the trial court's instructions wholly failed to distinguish between the two types of negligence. Instead, the jury instructions inextricably comingled medical and administrative negligence so the jury likely believed it could find defendant liable for medical negligence based on evidence of administrative negligence. Thus, the evidence related to administrative negligence and the trial court's failure to separate out the claims in the instructions together created a Gordian Knot, rendering it impossible to determine on which evidence or instruction the jury found defendant liable. Given the uncertainty about the premise of the jury's verdict, defendant has

met its burden to show that the improper evidence and resulting comingled instructions likely misled the jury. Under our precedent, certainly it was unclear "upon what theory or under which part of the [jury] charge the verdict was based," meaning defendant is entitled to a new trial. *Morrow*, 147 N.C. at 629, 61 S.E. at 623.

The majority ignores the question of whether plaintiff properly pled administrative negligence. Instead of asking whether evidence related to administrative negligence tainted the verdict, the majority asserts that plaintiff need not plead a separate claim for administrative negligence because all of plaintiff's evidence about defendant's breach of administrative duties amounted to "a theory underlying the overall claim of medical negligence." It appears that the majority would not require a plaintiff to precisely plead either medical or administrative negligence; under the majority's rationale, so long as a party pursuing a medical malpractice claim meets 9(j) pleading requirements generally and states that it is pursuing a medical malpractice claim, that party can present evidence of either or both medical or administrative negligence under its claim by asserting that the evidence relates to a "theory," not a separate claim.

In doing so, the majority ignores that the legislature chose to separate medical and administrative negligence claims when re-categorizing administrative negligence as a type of medical malpractice subject to heightened pleading requirements. *See* N.C.G.S. § 90-21.11 (stating that a medical malpractice action can be based on *either* type of negligence, one being medical negligence and the other

being administrative negligence). The legislature chose to require separate 9(j) certification and other heightened requirements for both medical and administrative negligence. Further, the majority's decision to allow a plaintiff to proceed on either type of negligence without distinction undermines the concept of notice pleading.

Notably, it is not the Court's job to redefine medical negligence. Through its holding, the majority nonetheless acts as the legislature, ignores the express language of our General Statutes, and relegates a clearly defined cause of action for administrative negligence into only a theory supporting a claim of medical negligence. This rationale conflicts with the express language of N.C.G.S. § 90-21.11(2). It is certainly unclear how the majority would treat a separate claim for administrative negligence.

Because administrative negligence was not properly pled, it was improper to allow evidence of it and to include it in the jury instructions and verdict sheet. Administrative negligence should not have been a part of the jury's decision on whether to find defendant liable for medical negligence. The jury instructions failed to separate the claims for administrative and medical negligence, and the evidence at trial failed to distinguish between the claims. Therefore, because the issues are "inextricably interwoven" here, *Robertson*, 285 N.C. at 569, 206 S.E.2d at 196, defendant is entitled to a new trial excluding evidence or instruction on administrative negligence. I respectfully dissent.